This is an appeal by the proponent of a will from a judgment in a will contest in favor of the contestant. A jury found that the purported will of Sam C. Cook, Jr., was not his valid last will and testament.
Testator Sam C. Cook, Jr., was born in Elmore County, Alabama, on June 26, 1913. He had three brothers and a half-sister. He was graduated from Howard College in Birmingham with a degree in pharmacy. In May, 1941, he enlisted in the United States Navy. He was married in August, 1941, and his only son, the contestant, was born in June, 1942. He was discharged from the Navy in 1944, and at that time was suffering from dementia praecox, a common form of insanity.
After his discharge from the Navy, testator returned to Elmore County and lived with his parents in the old home-place. Gaddis Cook, one of the testator's brothers and the proponent of this will, returned from service in 1946, and also lived with his parents. In 1947, testator was divorced from his wife and given custody of his son. Thereafter, testator, his parents, the proponent and the contestant lived together in the homeplace. Proponent opened Cook's Drug Store in Montgomery and testator began working for him.
The testator's father died in 1953, and shortly thereafter, testator voluntarily entered the V.A. hospital in Tuscaloosa. After his release from the hospital, testator returned to the homeplace and lived there until 1974, when he began living with the proponent.
In 1959, one Georgia Bailey came to Elmore County, Alabama, and began cooking for the testator. At trial, she claimed to have been the testator's common-law wife, testifying that they had lived together for eighteen years.
The contestant, Sam C. Cook, III, ran away from home in 1959, and began living *Page 1039 
with his uncle, the proponent. In 1960, the contestant joined the Navy. In the same year, testator's mother died and he was left alone at the homeplace.
After joining the Navy, the contestant never lived in Elmore County again and saw his father, the testator, but twice before his father's death.
In 1974, testator had surgery for a hernia and upon his return from the hospital, lived with the proponent. After one of their relatives died without a will, causing the settlement of the estate to be protracted, testator asked the proponent, who had attended Jones Law School, to draft a will for him. The will provided that a trust of $5,000 be established and that the trustee pay to Georgia Bailey $150 per month from the trust until her death. The will further provided that the contestant would receive the right to cut timber from property located in Wilcox County for a period of five years. Testator left the remainder of his estate to the proponent, his brother.
On April 12, 1979, testator died, and on April 18, 1979, proponent filed a petition in the Probate Court of Elmore County seeking to probate the will of Sam C. Cook, Jr. The probate court set the petition to be heard on May 17, 1979, and on May 10, 1979, Sam C. Cook, III, the contestant, filed a contest to the will alleging as follows: (1) that the deceased lacked testamentary capacity; (2) that the will was not executed in the manner prescribed by law; (3) that the will was procured by undue influence exerted by Gaddis M. Cook and (4) that the will was procured by fraud by Gaddis M. Cook. The contestant demanded a jury trial and that the contest be transferred to the circuit court. The trial was had in the circuit court and the jury returned a verdict finding that the purported will was not the valid last will and testament of Sam C. Cook, Jr.
The proponent-appellant raises several issues on appeal. These issues may be stated as follows:
(1) Whether the circuit court had subject matter jurisdiction over the case, because statutory requirements were not followed;
(2) Whether the trial court committed reversible error when instructing the jury on the issue of a presumption of undue influence;
(3) Whether the trial court erred in allowing the testimony of a psychiatric social worker on the issue of the testator's mental condition;
(4) Whether the trial court erred in refusing to give an affirmative charge on the issue of fraud;
(5) Whether the trial court erred in refusing to allow the proponent to reply to the contestant's opening statement;
(6) Whether the trial court erred in refusing to give proponent's requested charges numbered 27, 14, 4 and the proponent's general affirmative charge on the issue of due execution;
(7) Whether the trial court erred in refusing to allow the Reverend Lee Franklin to give an opinion on the testator's mental condition; and
(8) Whether the trial court erred in refusing to allow the proponent's counsel to infer from the evidence, during closing argument, that Georgia Bailey had a deal with the contestant whereby she would receive more money than the amount bequeathed to her in the will.
We find no prejudicial error, and affirm the judgment entered on the jury verdict.
 I
Proponent first contends that the probate court never transferred the will contest to the circuit court as required by Code 1975, § 43-1-78, and that the circuit court, therefore, never had subject matter jurisdiction over the case. Code 1975, § 43-1-78, requires:
 Upon the demand of any party to the contest, made in writing at the time of filing the initial pleading, the probate court, or the judge thereof, must enter an order transferring the contest to the circuit court of the county in which the contest is made, and must certify all papers and documents pertaining to the *Page 1040 
contest to the clerk of the circuit court, and the case shall be docketed by the clerk of the circuit court and a special session of said court may be called for the trial of said contest or, said contest may be tried by said circuit court at any special or regular session of said court. The issues must be made up in the circuit court as if the trial were to be had in the probate court, and the trial had in all other respects as trials in other civil cases in the circuit court. An appeal to the supreme court may be taken from the judgment of the circuit court on such contest within 42 days after the entry of such judgment. After a final determination of the contest, the clerk of the circuit court shall certify the transcript of all judgments of the circuit court in such proceedings, together with all of the papers and documents theretofore certified to the circuit court by the probate court, back to the probate court from which they were first certified to the circuit court, and thereafter shall be recorded in the probate court as all other contested wills are recorded in the probate court. (Code 1923, § 10636; Code 1940, T. 61, § 63; Acts 1947, No. 712, p. 552.)
Proponent specifically contends that the appropriate order of transfer was never entered. The only evidence of the transfer is contained in the supplemental record filed in this appeal, which contains a copy of the docket sheet of Proceedings and Orders in the Estate of Sam C. Cook, Jr., which indicates that on May 16, 1979, the case was transferred to the Circuit Court of Elmore County. The issue is essentially whether the docket sheet notation is a sufficient order pursuant to § 43-1-78. To answer the question thus posed, we must examine our procedural rules. Rule 81 (a)(5), ARCP, provides that the Rules of Civil Procedure are applicable to the probate court in will contests to the extent that those proceedings are not controlled by statute. Rule 58 (c), ARCP, states that "notation of a judgment or order . . . in the civil docket . . . constitutes the entry of the judgment or order"; therefore, under Rule 58 (c) the notation on the probate docket was a sufficient order of transfer to the circuit court as required by § 43-1-78. To hold otherwise would place form over substance at the expense of justice.
Proponent further contends that the papers and documents were never certified to the clerk of the circuit court as required by § 43-1-78. The supplemental record clearly shows that the circuit clerk acknowledged receipt of the papers. The record also contains the circuit court docket sheet which indicates that on May 21, 1979, the file was transferred to the circuit court from the probate court. There is sufficient evidence apparent in the record to show compliance with § 43-1-78. While a more formal order and certification is desirable, the purpose of the statute is met. We can tell when jurisdiction attached in circuit court of the will contest.
 II
Proponent's second contention is that the trial court erred in refusing to instruct the jury that before a presumption of undue influence arises, they must find that the beneficiary is a favored beneficiary. Pruitt v. Pruitt, 343 So.2d 495 (Ala. 1976), states:
 In other words, evidence must establish: (1) a confidential relationship between a favored beneficiary and testator; (2) that the influence of or for the beneficiary was dominant and controlling in that relationship; and (3) undue activity on the part of the dominant party in procuring the execution of the will. Wilson v. Payton [251 Ala. 411, 37 So.2d 499 (1948)], supra; Alexander v. Alexander, 208 Ala. 291, 94 So. 53 (1922).
The term "favored beneficiary" was defined by that case as:
 One who, in the circumstances of the particular case, has been favored over others having equal claim to the testator's bounty. An unnatural discrimination, leading to a natural inference that advantage has been taken by one in position so to do; and shown to have been busy in getting such will executed. *Page 1041 [Cook v. Morton, 241 Ala. 188, 1 So.2d 890 (1941).]
343 So.2d at 499.
In Arrington v. Working Woman's Home, 368 So.2d 851 (Ala. 1979), this Court stated the elements necessary to raise a presumption of undue influence in a will contest as: (1) a confidential relationship, (2) dominance, and (3) undue activity in procuring execution. We have examined the court's oral charge to the jury and we find no prejudicial error. Although the trial court did not charge the jury that they must find that the proponent was a "favored beneficiary," that is, that he was favored over others having an equal claim to the estate of the testator, we find no error to reverse. Rule 45, ARAP. Here, the court's charge followed substantially Alabama's Pattern Jury Instructions, § 38.10, and there can be little doubt that proponent, a brother of the testator, was "favored" over the contestant, son of the testator.
 III
The proponent's third contention is that it was error for the trial court to permit a psychiatric social worker, to testify concerning his opinion as to whether someone of the testator's mental condition could be easily led.
It is error for a court to allow an expert witness to testify outside his area of expertise, Central Aviation Company v.Perkinson, 269 Ala. 197, 112 So.2d 326 (1959), but, as stated in Alabama Power Company v. Henderson, 342 So.2d 323 (Ala. 1976), the competency of a witness to testify as an expert is discretionary with the trial court and its decision will not be disturbed unless it is plainly erroneous. Here, we cannot say that it was plainly erroneous for the trial court to allow the psychiatric social worker to testify concerning whether someone of the mental state of the testator could be easily led. It was shown that the expert had done clinical evaluations of persons believed to have mental disorders. It was shown that he had experience and education in these areas. The trial judge did not err in allowing the witness to testify concerning the characteristics of a person with a certain mental impairment.
 IV
Proponent's fourth contention is that it was error for the trial court to refuse to charge the jury that it could not find for the contestant on the issue of fraud. The contestant had alleged that the proponent had procured the execution of the will by fraud, but had not offered any proof to support the allegation.
The issue of fraud was never argued by the contestant, and there was no evidence presented concerning fraud. An instruction that fraud was not an issue in the case could have confused the jury. Confusion could have resulted in the instant case because of the great similarity between undue influence and fraud. While the two are not exactly synonymous, fraud is a form of undue influence and undue influence is generally considered to be a species of fraud. Holmes v. Riley, 240 Ala. 96,196 So. 888, 890 (1940); Shirley v. Ezell, 180 Ala. 352,60 So. 905, 907 (1913). Requested charges which would tend to mislead or confuse the jury may properly be refused by the trial court. Louisville Nashville R.R. Co. v. State, 276 Ala. 99, 159 So.2d 458 (1963); Shipp v. Ferguson, 202 Ala. 9,79 So. 307 (1918); Rolston v. Langdon, 26 Ala. 660 (1855).
Scott v. Louisville Nashville R.R. Co., 217 Ala. 255,115 So. 171 (1928), is distinguishable. There, the plaintiff alleged negligence and wantonness and the defendant pleaded the defense of contributory negligence. Before the case was submitted to the jury, the plaintiff withdrew his negligence claim and requested an instruction that contributory negligence was not a defense to the remaining claim. This Court held that where there was evidence to support the contributory negligence defense, but the defense had been eliminated by amendment, it was error to refuse to charge that contributory negligence was no longer a defense. In Scott, the jury could have been confused if the charge was not *Page 1042 
given. Here, the jury could have been confused, as previously stated, if the charge was given.
 V
Proponent's fifth contention is that it was error for the trial court to refuse to allow him to reply to the contestant's opening statement. Appellant relies upon Smith v. Bryant,263 Ala. 331, 82 So.2d 411 (1955), which, he contends, requires that the proponent be given an opportunity to make an opening statement, followed by the contestant's opening statement and then the proponent has the right to have a final opening statement.
Proponent misreads Smith. The argument discussed in Smith, and the one to which the proponent has the right to respond, is the closing argument. The language used in Smith does speak of the proponent having the right to make the opening argument, but that language refers to opening and closing the argument after the presentation of evidence, and the court's instructions. It was not error for the trial court to have denied the proponent his request to rebut the contestant'sopening statement.
 VI
Proponent next contends that it was error for the trial judge to refuse to give his written requested charges numbered 27, 14, 4 and the requested general affirmative charge as to due execution (number 34).
The requested charges are as follows:
 PROPONENT'S WRITTEN REQUESTED CHARGE NO. 27
 The court charges the jury that it is not necessary that the attestation of the will by the witnesses be at the personal request of the testator; it is sufficient if done in the testator's presence with his knowledge and consent, expressed or implied.
 PROPONENT'S WRITTEN REQUESTED CHARGE NO. 14
 The fact that a will executed with due solemnity by a competent person, containing clauses and provisions in favor of the person alleged to have exercised undue influence, if suffered to remain unrevoked for any considerable time after the alleged causes have ceased to operate, or before they commenced to operate, is evidence that it was freely executed, and that it gave expression to the settled will of the testator respecting his property, and his affections towards the donee.
 PROPONENT'S WRITTEN REQUESTED CHARGE NO. 4
 Members of the jury, I charge you that there is no burden on the proponent to prove the mental condition of the deceased, by the witnesses to the Will, and the fact that a person was a witness to the Will, does not entitle his or her evidence as to mental capacity to any greater weight or importance or significance than it would otherwise be entitled to receive.
 PROPONENT'S WRITTEN REQUESTED CHARGE NO. 34
 The court charges the jury that if you are reasonably satisfied of the truth of the evidence concerning the due and proper execution of the will, you cannot find for the contestant on that issue.
The trial judge charged the jury:
 Another requirement, ladies and gentlemen, is that when at the time a person makes or signs their will — let me back up just a second. On execution of a will it is not necessary that the person making the will; that is, the testator, tell the witnesses that it is a will or tell 'em what is in the will.
Thus, proponent's written requested charge number 27 was covered by the judge's oral charge to the jury.
Assuming proponent's written requested charge number 14 was a correct statement of law because it follows substantially *Page 1043 
an instruction approved in Knox v. Knox, 95 Ala. 495,11 So. 125 (1892), we find no reversible error. It is not error for the trial judge to give a charge which states a correct proposition of law, although it is argumentative, but it is not error to refuse such a charge. Hale v. Cox, 222 Ala. 136,131 So. 233 (1930).
The trial judge also charged the jury:
 Now, I say again, the law presumes that the testator was of sound mind and had testamentary capacity at the time of the execution of this will — I believe on September the 1st, 1976. The date is undisputed. So the burden of proof, therefore, is upon the contestant; that is, Sam C. Cook, III, to reasonably satisfy you by the evidence that at the time of the execution of this will the testator did not have the mental capacity to make a valid will.
This oral instruction by the court, although not exactly like the charge requested, when considered with the entire charge of the court and in light of the fact that testator's competency was an issue, was sufficient, especially since the requested instruction made reference to a "competent person" and contained more argument than legal principles.
Proponent also requested the general affirmative charge on due execution. In Smith v. Moore, 278 Ala. 173, 176 So.2d 868
(1965), this Court considered the refusal of a trial court to give a general affirmative charge. The Court opined:
 The refusal to give these charges was not error. As we have so often stated, the scintilla rule prevails in this state and a mere spark of evidence or inference to be drawn from any evidence in support of the theory of the case against whom the affirmative charge is sought is sufficient to compel the denial of the affirmative charge.
In the present case, there was evidence which, if believed, might prove the contestant's allegation of undue influence. Proof of undue influence, in turn, would negate the testator's intent which would negate a valid execution. Hale v. Cox,222 Ala. 136, 131 So. 233 (1930).
We cannot say that the trial court erred in refusing to give any of the above written requested charges.
 VII
Proponent next contends that it was error for the trial court to refuse to permit Reverend Lee Franklin to state his opinion as to whether the testator was a strong-willed or weak-willed person. Proponent argues that Houston v. Grigsby, 217 Ala. 506,116 So. 686 (1928), is controlling. In Houston, it was held that there was no error in permitting witnesses who knew the deceased well to testify that she was a woman of strong or firm will. The rationale expressed was that this was but a summary of the facts and had a bearing on the question of undue influence.
Before a witness may testify as to the condition of a person he must first testify as to his familiarity with that condition. Whether the witness possesses the requisite qualifications is a preliminary question within the discretion of the court. Lackey v. Lackey, 262 Ala. 45, 76 So.2d 761
(1954). Here, we cannot say from our review of the record that the trial court abused its discretion.
 VIII
Proponent's final contention is that it was error for the trial court to refuse to permit his counsel to infer from the evidence in his summation to the jury, that Georgia Bailey, one of the witnesses, and a beneficiary under the contested will, had a deal with the contestant. The specific argument to which the contestant objected is as follows:
 MR. GEORGE P. HOWARD: It's true. Georgia Bailey didn't want that to be Sam's will. She didn't want that five thousand dollars. Why didn't she want the five thousand dollars? Because she had a deal. She had a deal whereby she was going to get more than five thousand dollars. But we don't have any answer other —
In Walker v. Cardwell, 348 So.2d 1049 (Ala. 1977), this Court stated: *Page 1044 
 In argument to the jury, counsel may not argue as a fact that which is not in evidence, but he may state or comment on all proper inferences from the evidence and may draw conclusions from the evidence based on his own reasoning. Adams v. State, 291 Ala. 224, 279 So.2d 488 (1973). Much must be left to the judgment of the trial court, with presumptions in its favor. To justify reversal, substantial prejudice must have resulted. Id. McLaney v. Turner, 267 Ala. 588, 104 So.2d 315 (1958).
Proponent admits that there was no evidence of a "deal," but he contends that the argument was permissible as an "inference from the evidence." We find that the trial judge properly handled this issue.
For the foregoing reasons, the judgment of the trial court is due to be affirmed.
AFFIRMED.
TORBERT, C.J., and JONES, SHORES and BEATTY, JJ., concur.