This is an appeal from a judgment entered in favor of the proponent of a will. We affirm.
The testator in this case was Joe K. Clifton. He died on April 10, 1985. Proponents of the will include Jerome P. Clifton (the wife of the deceased), and five daughters, Dorothy Giles, Marie Moody, Norma Jo McKinney, Virginia Wyatt, and Betty K. Murphy. The contestant of the will is James T. Clifton, the only son of the testator.
On March 21, 1985, approximately three weeks before his death, Joe Clifton executed a will and codicil. The will left everything to his wife except the homeplace, which was left to his daughter Dorothy, with a life estate to Mrs. Clifton. If Mrs. Clifton died first, then a division of *Page 982 
property would take place among the six children. Cash and securities were to be divided equally only among the five daughters. Also, the daughters were devised real property interests in fee simple. James Clifton, however, was not devised any real property in fee. Rather, a certain tract of land was devised to Dorothy Giles and Virginia Wyatt in trust, with the income from the property, if any, to be paid to James. The codicil, executed within hours after the will, changed the provision dealing with the cash and securities. It set up a trust with the corpus to be derived from the sale of securities and cash on hand and on deposit; Mrs. Clifton would receive only the income from the trust for life, and, upon her death, the principal would be divided among three of the daughters.
The provisions in the will favoring Dorothy Giles over James Clifton and the fact that a prior will had treated all the children equally generated this contest by James Clifton. The contest was filed in the probate court and was subsequently removed to the circuit court. As grounds for contesting the will and codicil, James Clifton alleged that his father lacked testamentary capacity and was unduly influenced by Dorothy Giles, Billy Giles, and Mrs. Jerome Clifton.
The testimony was presented ore tenus to the court, without a jury, and the evidence was contested as to both issues. The court did not make specific findings of fact; therefore, we must assume the trial court made those findings necessary to support its judgment, unless those findings would be clearly erroneous. Robinson v. Hamilton, 496 So.2d 8, 10 (Ala. 1986). The trial court held that no undue influence was exerted on Joe Clifton and that he had the requisite testamentary capacity. After considering the evidence and all reasonable inferences therefrom, we find the judgment to be neither plainly and palpably wrong nor manifestly unjust. Cupps v. Upton,489 So.2d 544, 547 (Ala. 1986); Robinson, supra.
The events leading up to the execution of the will and codicil on March 21, 1985, are as follows:
In June 1984, Joe Clifton executed a will that left everything to his wife, Jerome Clifton. If she predeceased him, the children were to divide the property equally. Soon after this will was executed, Joe Clifton became interested in making a new will. Joe was 74 years old and suffered from chronic emphysema. He realized that if he survived his wife, he would need some help and assistance, and that if his wife survived him, she would also need assistance. In June 1984, Joe contacted his daughter Dorothy and asked her whether she would consider moving back to Alabama from Georgia to be closer to Joe and his wife should they need her help. Dorothy Giles had a real estate business in Georgia, which she had built up over a period of years, as well as a family whose home was in Georgia. The record indicates that Joe promised his daughter the homeplace if she moved. In February 1985, Dorothy and her husband moved in with her parents, Joe and Jerome Clifton.
Joe Clifton also owned extensive real property interests. He was concerned that the children might not be able to divide this property among themselves under the June 1984 will. Thus, later in the summer of 1984, Joe began receiving suggestions from the children about what property they wanted.
Finally, of particular concern to Joe Clifton was the property that would go to his son James under the 1984 will. Joe knew that his son had incurred substantial debts and had several judgments entered against him. He feared that any share of the estate going to James would be subject to the claims of judgment creditors.
Consequently, in the fall of 1984, Joe met with his attorney, George Taylor, to discuss the preparation of a new will. Unfortunately, Mr. Taylor became ill and was unable to handle the drafting of a new will. In January 1985, another attorney, Al Booth, was employed. Mr. Booth testified that he worked on the will over a period of two months but never personally met Joe *Page 983 
Clifton until March 21, 1985, the day Joe signed the will and codicil. However, the record indicates that Joe Clifton, with the help of Dorothy and his wife, prepared a final draft of a will that was delivered to Mr. Booth and used as Joe's last will and testament.
On March 19, 1985, Joe fell at home and broke his hip. He was taken to the Selma Medical Center Hospital and surgery was scheduled. There was a chance that Joe would not survive the surgery due to his age and health. Thus, Joe wanted to execute his new will prior to the surgery. On the morning of March 21, prior to surgery, Joe Clifton executed the will in question in the presence of two nurses and a notary public. Also on the morning of the 21st, Dorothy instructed Mr. Booth to prepare a codicil to the will. She testified that her mother and father had intended to establish a trust that would equalize the real estate values devised to the daughters in the will. Because of the sudden emergency, there was no time to establish a separate trust. Thus, Dorothy testified, she instructed Mr. Booth to draft a codicil, which would have the same effect. Around noon, Mr. Booth arrived at the hospital with the codicil. He talked with Joe Clifton for the first time. He thoroughly explained the will that had been signed earlier, and he explained the codicil. Joe responded by saying, "That's right. That's what I want." Although Joe Clifton survived the surgery, he never left the Selma Medical Center Hospital; he died there on April 10, 1985.
In this contest, the charge of undue influence is directed primarily toward Mrs. Dorothy Giles[1]. It is well established that the contestant who challenges a will on the basis of undue influence bears the burden of proving such allegations. Kellyv. Donaldson, 456 So.2d 30, 33 (Ala. 1984). This burden will not shift to the proponent of the will unless the contestant proffers evidence (1) that a confidential relationship existed between a favored beneficiary and the testator; (2) that the influence of or for the beneficiary was dominant and controlling in that relationship; and (3) that there was undue activity on the part of the dominant party in procuring the execution of the will. Penn v. Jarrett, 447 So.2d 723, 724
(Ala. 1984); Reed v. Walters, 396 So.2d 83, 86 (Ala. 1981).
A confidential relationship arises when one comes to rely upon and trust another in one's important affairs. Pruitt v.Pruitt, 343 So.2d 495, 499 (Ala. 1976). Joe Clifton came to rely upon Dorothy to assist him in handling the drafting of his new will. In December 1984, Dorothy was present at a meeting with George Taylor to discuss the preparation of Joe's new will. Dorothy also had numerous meetings with Mr. Booth concerning the contents of Joe's will. Joe solicited her help in procuring legal descriptions, plats, maps, and copies of deeds to help him divide the estate among the children. It appears that there was a confidential relationship between Joe and Dorothy.
Likewise, it appears that Dorothy Giles was a favored beneficiary. This Court has defined a favored beneficiary as:
 "[o]ne who, in the circumstances of the particular case, has been favored over others having equal claim to the testator's bounty. An unnatural discrimination, leading to a natural inference that advantage has been taken by one in position so to do; and shown to have been busy in getting such will executed."
Cook v. Morton, 241 Ala. 188, 192, 1 So.2d 890, 892 (1941). The "equal claim" of others refers not to the laws of descent and distribution but to the facts of the particular case. Windhamv. Pope, 474 So.2d 1075, 1077 (Ala. 1985).
In this case, the devise favoring Dorothy with respect to the homeplace was not an unnatural discrimination making Dorothy a favored beneficiary. Dorothy had agreed to move back to Alabama and help her parents in exchange for her father's promise to leave her the homeplace. Clearly, *Page 984 
she had a greater claim to her father's benevolence with respect to the homeplace than any of the other children. Nevertheless, the provision in the 1985 will devising other real property interests in fee to her and the other daughters, while simply granting James an income interest from property to be held in trust, made her a favored beneficiary. Although the reason for this disparity in treatment was that James had outstanding judgments against him, Joe Clifton continued to feel sympathy and benevolence toward James. In his will, Joe stated that he held his son in as much regard as the other children, with an equal amount of love and affection. SeeWindham v. Pope, 474 So.2d 1075, 1077 (Ala. 1985). See alsoPruitt v. Pruitt, 343 So.2d 495 (Ala. 1976).
Whether Dorothy Giles was dominant and controlling in her relationship with her father, however, is less clear. Ordinarily, in will cases when the testator is the parent and the person active in procuring the will is the testator's child, the dominance of the parent is presumed to continue.Nottage v. Jones, 388 So.2d 923, 926 (Ala. 1980). However, this Court stated in Raney v. Raney, 216 Ala. 30, 34, 112 So. 313,316 (1927):
 "[W]hen old age weakens the physical and mental powers of the one, and full maturity brings strength to the other, when the parent comes to lean upon the child for counsel, leadership, the conduct of his affairs, the making of a home, it may come to pass, and the law so recognizes, that the natural order may be reversed and the will of the parent pass under the dominant will of the child."
Joe Clifton was 74 years old and suffering from emphysema, which made it difficult for him to talk. He depended on Dorothy to help him conduct his affairs. But there was ample testimony given at the trial establishing that Joe Clifton was extremely strong willed and not easily influenced.
Assuming, arguendo, that Dorothy Giles, as a favored beneficiary, was the dominant party in her confidential relationship with her father, the contestant still failed to meet his burden of showing undue activity on the part of Dorothy in procuring the execution of the will. Regardless of whether the beneficiary was the dominant party in the relationship, there must be some evidence of the beneficiary'scontrolling influence over the testator's purposes. Pruitt v.Pruitt, 343 So.2d 495, 499 (Ala. 1976). The appellant makes much of the fact that Dorothy was active in handling the execution of Joe Clifton's will. But mere activity is not sufficient justification for finding undue influence. There must be evidence of active interference in procuring the execution of the will. Wall v. Hodges, 465 So.2d 359, 363 (Ala. 1984).
Joe Clifton was physically unable to do the legwork he wanted done regarding his affairs and property. He came to rely upon his daughter Dorothy to do the work for him. Joe worked hard on his new will. He voluntarily decided to leave the homeplace to Dorothy in exchange for her moving back to Alabama. Also, Joe Clifton was aware of judgments against his son and sought to avoid any devise to James that would be subject to the claims of judgment creditors. On the day he signed the will, Joe was aware of its contents and acknowledged his agreement to its terms. Consequently, the contestant failed to show that Dorothy's activity was something other than a compliance with or obedience to the voluntary and untrammeled direction of the testator, Joe Clifton. Arrington v. Working Woman's Home,368 So.2d 851, 853 (Ala. 1979), citing Burke v. Thomas, 282 Ala. 412, 211 So.2d 903 (1968).
The contestant strongly urges this Court, however, to find as a matter of law that undue influence existed because Joe Clifton never met personally with the attorney who prepared his will until the day the will was signed. We cannot agree.
Our cases have consistently held that, when undue influence is asserted in a will contest, a question of fact arises as to whether the favored beneficiary did indeed exert undue influence. In Arrington v. Working Woman's Home, supra, we held that undue influence per se did not exist merely because the beneficiary was living in the same house with the testator during *Page 985 
the time when the will was executed. It must be kept in mind that the gravamen of an undue influence allegation is that the favored beneficiary played such a part in the procurement of the will that the testator did not make the will under his own volition and devise his property in a manner consistent with his free will and desires. Windham, supra. Joe Clifton's failure to meet with his attorney prior to the signing of the will may have presented an "opportunity for influence,"Arrington, supra, but it cannot be said, as a matter of law, that his free will and desires were, in fact, violated. Each case must be decided on its own particular facts, and the trial judge in this case was in the best position to determine what weight to give this evidence.
The appellant's contention that the codicil executed by Joe Clifton was the product of undue influence is also without merit. First, there was no evidence presented by the contestant showing that the terms contained in the codicil were contrary to Joe Clifton's desires. In fact, Joe stated, after the codicil was explained to him, "That's right. That's what I want." Second, Dorothy Giles is not a favored beneficiary with respect to the codicil. The will provided that, in the event Mrs. Clifton died first, the cash and securities were to be equally divided among all five daughters. The codicil, however, placed the cash and securities in trust to benefit Mrs. Clifton for life, and, upon her death, the principal was to be unequally divided among only three of the daughters: Virginia Wyatt, Betty Murphy, and Norma Jo McKinney. Dorothy Giles wasexcluded from taking under the codicil.
The appellant's alternative claim is that Joe Clifton lacked testamentary capacity. The overwhelming weight of the evidence, however, is that Joe Clifton had the capacity to execute the will and codicil on March 21, 1985. Numerous witnesses who saw Joe and talked to him on the day in question testified that Joe was of sound mind. The deposition of Dr. Charles Carr, who had been treating Joe since 1933, likewise states that Joe was of sound mind on March 21. The only disputed testimony came from James Clifton and Dr. Donald Overstreet. James testified that his father seemed afraid and was trembling, but James could not testify as to anything his father said that made him think his father was of unsound mind. Dr. Overstreet did not observe Joe on March 21, but testified, from examining hospital records, that the medications Joe was on prior to surgery that day may have affected his mental capabilities. The trial court decided the disputed testimony in favor of the proponents of the will by finding that Joe was of sound mind. We cannot find that decision to be plainly or palpably wrong under the record.
The appellant's final argument on appeal is that the trial court committed reversible error when it allowed the introduction of numerous judgments entered against him. As authority for this claim, appellant cites Vaughn v. Vaughn,217 Ala. 364, 116 So. 427 (1928). In Vaughn, it was held error to introduce evidence of an unsatisfied judgment against the contestant of the will because such evidence had a tendency to discredit the contestant's testimony and his efforts to contest the will. 217 Ala. at 366, 116 So. at 427. However, the unsatisfied judgment in Vaughn was not a material issue in the case. In this case, the fact that James had several judgments entered against him was a crucial factor in determining Joe Clifton's intent and desires. We, therefore, find appellant's reliance on Vaughn, supra, to be misplaced.
For the above stated reasons, the judgment of the trial court is affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, ALMON and HOUSTON, JJ., concur.
[1] The contestant alleged that Mr. Billy Giles and Mrs. Jerome Clifton also unduly influenced the testator. However, neither Mr. Giles nor Mrs. Clifton is a favored beneficiary. We, therefore, address only the issues relating to Mrs. Dorothy Giles. *Page 986