The proponents of a will appeal from a judgment on a jury verdict for the contestants.
On October 11, 1990, three children of Charley Bolan, deceased, as proponents of his purported will, petitioned to probate the will. On November 28, 1990, three other children and the heirs of a deceased child filed a contest, alleging that the will was invalid because of improper execution,[1] undue influence by the proponents in procuring the will, and lack of testamentary capacity. The contest was subsequently transferred to the Circuit Court of Morgan County, where, upon a trial, a jury returned a verdict for the contestants after the court had denied the proponents' motion for a directed verdict. The trial court then denied the proponents' motion for a j.n.o.v. or for a new trial. The issues are *Page 1053 
whether the will contest was properly transferred from the probate to the circuit court; whether the trial court properly instructed the jury on the elements of the proof required in a contest alleging undue influence; and whether the contestants presented sufficient evidence to withstand the proponents' motions for a directed verdict and for a j.n.o.v.
The facts of this dispute are as follows:
Charley Bolan died on October 8, 1990. He was survived by six children: Janie Bryant, Charles Bolan, Melvin Bolan, Bessie Walker, Betty Brown, and John Bolan. One child, James, had predeceased Charley, leaving a widow and five children. The evidence shows that Charley was elderly, illiterate, and in poor health immediately before his death.
Charley's wife had died in 1984. Thereafter, Janie and Betty entered into an agreement whereby Betty would cook for and take care of Charley in the morning and Janie would perform these duties in the afternoon and evening. Janie was with Charley daily from then on, while the evidence is conflicting as to how often Betty performed her duties.
On September 6, 1990, Charley attempted to execute a will. He dictated the terms of the will to Suprena Moats, the daughter of Melvin Bolan, who in turn copied his instructions onto a piece of paper that was appended to a preprinted will form. In this document, Charley left $1.00 each to John, Bessie, Betty, and each child of his deceased son James; he left the remainder of his estate to Janie, Charles, and Melvin. Suprena Moats testified that Charley told her that he was excluding the former parties because of the way they had treated him during his recent illness.
Subsequently, Janie called a local lawyer to determine whether the will was legally valid. The lawyer replied that the will needed to be notarized to be valid. After receiving the lawyer's opinion, Janie contacted Mr. Jackson, a notary public, and also arranged for witnesses to be present at a reexecution of the document.
On September 9, 1990, Mr. Jackson and three witnesses gathered at Charley's home, along with several members of the family. The three witnesses testified at trial that Mr. Jackson requested that the family members leave the room where Charley would be signing, and that they did. The witnesses further testified that Mr. Jackson read the will aloud to Charley and went over its provisions to make sure that Charley was aware of the dispositions he was making. All three witnesses to the execution of the will testified that they believed Charley was in sound mental condition at the time he signed the will. Betty, however, testified that she did not believe Charley's mental state was sound when he signed the will and that Charley's condition had been deteriorating for several months before he signed it. Another witness at trial also testified that Charley's physical and mental condition had worsened considerably in the months preceding the making of the will.
The proponents first argue that the circuit court never acquired jurisdiction over the proceedings because, they say, the contestants failed to comply with the requirements of §43-8-198, Ala. Code 1975. That section provides, in pertinent part:
 "Upon demand of any party to the contest, made in writing at the time of filing the initial pleading, the probate court, or judge thereof, must enter an order transferring the contest to the circuit court of the county in which the contest is made."
The proponents point out that the motion to transfer was filed on November 29, 1990, which they say was one day after the contest was filed, and they argue that the circuit court therefore failed to acquire jurisdiction over the case. The proponents concede that the document initiating the contest itself bears no filing date; they argue that it was filed on November 28, 1990, because that is the date of the certificate of service contained within the contest document. The proponents rely primarily upon Kaller v. Rigdon, 480 So.2d 536
(Ala. 1985), as support for their conclusion. Kaller, however, is inapposite to the present situation, except to the extent that it *Page 1054 
simply restates the requirements of § 43-8-198.
Although the proponents correctly assert that § 43-8-198
ordinarily must be strictly followed in order to confer jurisdiction on the circuit court, Simpson v. Jones,460 So.2d 1282 (Ala. 1984), the proponents have failed to show that the contest and the motion for transfer were filed on different days. The probate court's "certificate of transcript" includes the contest document and the motion for transfer together as item number 7 being transmitted to the circuit court. The contest document and the motion for transfer were consecutively paginated by the probate court; the contest document is three pages long and the motion for transfer is one page long. The contest document does not bear a filing date, but the motion is signed by the probate judge as being filed on November 29. From this record, it appears that the probate court treated the two documents as a single four-page filing. This Court will not elevate "form over substance at the expense of justice," Cookv. Cook, 396 So.2d 1037, 1040 (Ala. 1981), by reading the date of the certificate of service on the contest document as the date of filing.
The proponents next contend that the trial court erred in instructing the jury concerning the requirements necessary for a presumption of undue influence to arise. The relevant portion of the trial court's charge, which is patterned on AlabamaPattern Jury Instructions 38.10 and 38.11, is as follows:
 "If you are reasonably satisfied from the evidence that a confidential relationship existed, and I'll have to tell what a confidential relationship is in a minute, we're going to waive the burden of presumption [sic].
 "If you're reasonably satisfied from the evidence that a confidential relation existed between the testator, that is the father who is deceased, and Melvin Bolan, Janie Bryant or Charles Jackson Bolan or any one of these at the time of the execution of the will in question; and that Melvin Bolan, Janie Bryant or Charles Jackson Bolan, Jr., or any one of them participated directly or indirectly in the preparation or execution of the will in which one or more of those persons was named as beneficiary — there is no dispute that they were sole beneficiary — a presumption of undue influence arises and, in that event, the burden is on the Proponents to reasonably satisfy you from the evidence that the will in question was not directly or indirectly the product of undue influence on the part of Melvin Bolan, Janie Bryant or Charles Bolan, Jr., or any one or more of them.
 "A confidential relation exist[s] when two parties stand in such a relation to each other, that trust and confidence is justly placed by one person in the other and the other person possesses the influence which naturally grows out of that trust and confidence.
 "Undue influence is influence exerted at any time upon the testator which causes him to make a disposition of his property that is contrary to his own free will and desires.
 "The legal presumption of undue influence arises only if you're reasonably satisfied from the evidence that both of the following elements exist: One, a confidential relationship exists, as heretofore defined to you, between the testator, that's the deceased man, and Melvin Bolan, Janie Bryant or Charles Jackson Bolan, Jr., or any one or more of them. And there was active participation by either Melvin Bolan, Janie Bryant or Charles Jackson Bolan, Jr., or in concert with one another, or two of them, either directly or indirectly and the preparation of the execution of the will offered for probate.
 "There must be a confidential relationship, the person who is a dominant person and again the confidential relationship, the one to which trust is imposed must have been a beneficiary under the will and that person must have had some activity in and about getting the will signed or prepared. If all of those things come together, then the presumption is that there was undue influence and it becomes the burden of these folks *Page 1055 
over here [the proponents] to satisfy you that such was not the case.
 "If you're reasonably satisfied from the evidence that a confidential relationship did, in fact, exist between testator and Melvin Bolan, Janie Bryant, and Charles Bolan Jr., or any one or more of them, and that they actively participated in or caused the preparation of and execution of the will offered for probate in the court, either directly or indirectly, in such manner as to unduly influence the testator to execute the will offered for probate and that said will is the product of such undue influence, then you will find against the will.
 "If on the other hand, if you're reasonably satisfied from the evidence that the will offered was not the product of undue influence exerted from [sic] the testator by Melvin Bolan, Janie Bryant or Charles Jackson Bolan, Jr., or one or more of them, . . . in that event you will find in favor of the will.
 "If you're reasonably satisfied from the evidence, that there was a dominant confidential relationship between the deceased and any beneficiaries named under the will and undue activity or interference in the preparation or in the execution of the will by the favored beneficiary or by some person acting for him or them or under his discretion [sic], then that raises a prima facie presumption of undue influence for the Contestant. This prima facie presumption of undue influence for the Contestant casts the burden of proof upon the Proponent to reasonably satisfy you from the evidence that there was no undue influence in the execution of the will.
 "A dominant confidential relationship coupled with undue activity in the execution of a will by or for a favored beneficiary must be shown to your reasonable satisfaction from the evidence in order to raise a presumption of undue influence in the execution of the will."
The proponents specifically contend that this instruction was incomplete insofar as it omitted reference to the "controlling influence" element allegedly enunciated in Clifton v. Clifton,529 So.2d 980 (Ala. 1988). The proponents assert that Clifton
requires this element to be proven, in addition to the "confidential relationship," "dominance," and "undue activity" elements to establish a presumption of undue influence.
The Clifton court held that to establish a prima facie case of undue influence the contestant must proffer evidence:
 "(1) that a confidential relationship existed between a favored beneficiary and the testator; (2) that the influence of or for the beneficiary was dominant and controlling in that relationship; and (3) that there was undue activity on the part of the dominant party in procuring the execution of the will."
529 So.2d at 983 (emphasis added). In assessing the evidence required for the presumption of undue influence to arise, the Court stated:
 "Assuming, arguendo, that Dorothy Giles, as a favored beneficiary, was the dominant party in her confidential relationship with her father, the contestant still failed to meet his burden of showing undue activity on the part of Dorothy in procuring the execution of the will. Regardless of whether the beneficiary was the dominant party in the relationship, there must be some evidence of the beneficiary's controlling influence over the testator's purposes. Pruitt v. Pruitt, 343 So.2d 495, 499 (Ala. 1976). The appellant makes much of the fact that Dorothy was active in handling the execution of Joe Clifton's will. But mere activity is not sufficient justification for finding undue influence. There must be evidence of active interference in procuring the execution of the will. Wall v. Hodges, 465 So.2d 359, 363
(Ala. 1984)."
Id., at 984 (emphasis in original). This is the passage relied upon by the proponents in their argument.
The "controlling influence" language is normally reiterative of the "dominance" element, as in the first quotation fromClifton above. In the second quotation from Clifton, however, it is clear that the Court is utilizing the "controlling influence" language *Page 1056 
not in reference to the "dominance" element but to the "undue activity" element; used that way, the term "controlling influence" in the second quotation is descriptive of the "undue activity" element and does not constitute a separate substantive prong of the test. Because the trial judge amply instructed the jury on all three elements necessary to raise a presumption of undue influence, his charge was a correct and sufficient statement of the law and the omission of the specific "controlling influence" language does not constitute reversible error. See Standard Plan, Inc. v. Tucker,582 So.2d 1024 (Ala. 1991) (reviewing court must examine jury charge as a whole in determining if reversible error exists); Rule 51, Ala.R.Civ.P.
The proponents' final contention is that the evidence was legally insufficient to support the jury verdict on the grounds of undue influence, lack of testamentary capacity, or fraud, and that therefore their motion for a directed verdict or for a j.n.o.v. should have been granted. The trial court denied both of those motions.
In assessing whether the trial court should have granted a directed verdict or a j.n.o.v. on the grounds that the evidence was legally insufficient, this Court must determine whether the nonmoving parties — the contestants — presented substantial evidence to support their claims. Ala. Code 1975, § 12-21-12;Bailey v. Avera, 560 So.2d 1038 (Ala. 1990). Moreover, the evidence must be viewed in the light most favorable to the nonmovant, and all permissible inferences favorable to the nonmovant must be drawn therefrom. Hanners v. Balfour Guthrie,Inc., 564 So.2d 412 (Ala. 1990). It is with this standard in mind that we turn to an examination of the evidence.
 UNDUE INFLUENCE
To raise a presumption of undue influence in a will contest and thus shift the burden of proof to the proponent, the contestant must prove dominance in a confidential relationship and undue activity in the execution of the will by or for a favored beneficiary. Wilson v. Payton, 251 Ala. 411,37 So.2d 499 (1948); Hyde v. Norris, 250 Ala. 518, 35 So.2d 181 (1948). Our cases sometimes restate this burden to require evidence
 "(1) that a confidential relationship existed between a favored beneficiary and the testator; (2) that the influence of or for the beneficiary was dominant and controlling in that relationship; and (3) that there was undue activity on the part of the dominant party in procuring the execution of the will."
Parker v. Marshall, 549 So.2d 463, 465 (Ala. 1989); Clifton v.Clifton, supra, 529 So.2d at 983.
Initially, there can be no doubt that a confidential relationship existed between Janie and Charley. Janie was with Charley daily following the death of Charley's wife in 1984; she came to his house, cooked for him, and attended to his affairs. Janie's name was listed on a joint checking account along with Charley's; no other child's name was on the account.
The proponents argue that even if a confidential relationship existed between Janie and Charley, there is no evidence that Janie is a "favored beneficiary" in the legal sense of that term. The term "favored beneficiary" was defined in Cook v.Morton, 241 Ala. 188, 192, 1 So.2d 890, 892 (1941):
 "One who, in the circumstances of the particular case, has been favored over others having an equal claim to the testator's bounty. An unnatural discrimination, leading to a natural inference that advantage has been taken by one in a position to do so; and shown to have been busy in getting such will executed."
The proponents assert that the favoritism Charley showed toward Janie was not unnatural at all, but was entirely normal in light of the closeness of their relationship and all that Janie had done for Charley. There was evidence that Betty and Charley were both strong-willed people and simply did not get along, notwithstanding Betty's good intentions in trying to persuade Charley to take medicine, see a doctor, and so forth. There was also substantial testimony, however, that the contestants enjoyed a good relationship with Charley up until the *Page 1057 
very end of his life. In light of this testimony, and because whether a beneficiary is "favored" depends the particular facts of the case, Cook v. Morton, supra, the trial court did not err in submitting to the jury the question of whether Janie was a "favored beneficiary" under the controlling Cook definition.
The proponents also argue that the contestants presented no evidence that Janie was dominant and controlling in the confidential relationship. The law requires that a party, to be considered dominant in the confidential relationship, must exercise controlling influence over the testator's purposes.Smith v. Smith, 384 So.2d 1069 (Ala. 1980). Here, there was testimony concerning Charley's strong will. However, it is also clear that Janie was with Charley on a daily basis and was largely responsible for all his basic needs. Also, Betty Brown testified that Janie had told Charley that she (Betty) had attempted to drug him; Betty asserts that this and other similar statements served to alienate Charley from everyone except Janie. This testimony, coupled with the clear opportunity for Janie to exercise dominance over Charley, was sufficient to present a jury question as to whether Janie was dominant and controlling in her relationship with Charley.
Last, the proponents argue that the contestants submitted no substantial evidence that Janie engaged in undue activity in procuring the execution of the will. The contestants offered evidence that Janie effectively dictated the terms of the September 6 will; that she tricked Pollie McCary, a witness to the will, into signing as a witness by informing Pollie that the document merely appointed Melvin as administrator of the estate; and that she attempted to coerce Pollie into giving false testimony with respect to the September 6 will.
This testimony, however, does not directly establish undue activity on Janie's part, because the September 6 will is not the will in question; the September 9 will is the relevant will. The contestants connect Janie's procurement of the first will with the execution of the second will by asserting that after the September 6 will was signed Janie, of her own accord, sought legal advice concerning the validity of the will, and, upon learning that she needed witnesses and a notary in order to assure the legality of the will, proceeded to gather these parties together for the September 9 reexecution. Janie testified that she consulted the lawyer only at Charley's direction, and the law does provide that acting at the untrammelled direction of the testator in procuring the execution of a will does not constitute undue activity on the part of a beneficiary. Clifton, supra, at 984. We hold, however, that the evidence of Janie's actions, taken altogether, constituted sufficient evidence of undue activity in procuring the will to support submission of the question to the jury. Accordingly, we conclude that the contestants presented substantial evidence of undue influence and that the trial court did not err in denying the directed verdict and j.n.o.v. motions directed toward this contest ground.
 LACK OF TESTAMENTARY CAPACITY
The proponents next argue that the contestants failed to present sufficient evidence of Charley's lack of testamentary capacity.
In order to execute a valid will, one must possess
 "mind and memory sufficient to recall and remember the property she was about to bequeath, and the objects of her bounty, and the disposition which she wished to make — to know and understand the nature and consequences of the business to be performed, and to discern the simple and obvious relation of its elements to each other."
Knox v. Knox, 95 Ala. 495, 503, 11 So. 125, 128 (1892);Fletcher v. DeLoach, 360 So.2d 316, 318 (Ala. 1978). Every testator is presumed to have the capacity to make a will, however, and the burden is on the contestant to prove the lack of testamentary capacity. Johnston v. Johnston, 174 Ala. 220,57 So. 450 (1912); Fletcher, supra. The contestant need not show that the testator suffered from permanent insanity; the contestant's burden may be carried by demonstrating that the testator lacked testamentary *Page 1058 
capacity at the time the will was executed. King v. Aird,251 Ala. 613, 617, 38 So.2d 883, 887 (1949); Tucker v. Tucker,248 Ala. 602, 611, 28 So.2d 637, 645 (1946).
When testamentary capacity is at issue, this Court has held that a very broad factual inquiry is desirable, so that evidence of the mental and physical condition of the testator, either before or immediately after the execution of the will, is admissible, since it tends to shed light upon the testator's condition at the time the will is executed. Burke v. Thomas,282 Ala. 412, 417, 211 So.2d 903, 908 (1968); Craig v. Perry,565 So.2d 171 (Ala. 1990); Fletcher, supra.
Here, the witnesses to the September 9 will all testified that Charley was in sound mental condition on the date of the execution. There was testimony to the same effect from other family members. However, there was also testimony from Betty that Charley was in poor health before the date of execution; that he repeatedly held conversations with his dead wife; that he refused to bathe, change his clothes, or otherwise take care of himself; and that he had rigged up a dangerous spring-gun to protect himself from intruders when no real threat existed. Evidence of this type was determined to be admissible to show the testator's mental condition in Howard v. Crowder,496 So.2d 31 (Ala. 1986).
Although the evidence was conflicting, the contestants presented sufficient evidence of a lack of testamentary capacity to support the submission of the contest to the jury on this ground.
 FRAUD
The proponents' final contention is that the contestants failed to produce substantial evidence on the fraud claim to submit that claim to the jury.
Fraud in the procurement of a will is generally considered a species of undue influence. Cook v. Cook, 396 So.2d 1037, 1041
(Ala. 1981). Because we have concluded that the contestants presented substantial evidence to support their undue influence claim, and because the proponents have not argued any independent basis for holding that it was error to deny a directed verdict on the fraud ground, we also conclude that no error is presented on this ground.
Because the contestants produced sufficient evidence to present a jury question on the stated grounds, the judgment entered on the verdict is hereby affirmed.
AFFIRMED.
HORNSBY, C.J., and ADAMS, STEAGALL and INGRAM, JJ., concur.