ROBERTSON, Presiding Judge.
On October 16, 1995, Edgar S. Hodges (“the proponent”) filed a petition for the probate of a will executed by Jack E. Howard on September 30, 1994, and appointing Hodges executor of the estate. Janice H. Joiner, Howard’s daughter, contested the will and filed a petition to remove the administration of Howard’s estate to the circuit court. The circuit court granted Joiner’s request for removal of the case on November 14, 1995. Joiner, and Cathy Walker and Sandra Gen-zone, Howard’s other daughters (all three sometimes referred to herein as “the contestants”), alleged that Howard lacked testamentary capacity when he executed the September 1994 will.
On December 9, 1996, the trial court consolidated the present action with an inter-pleader action filed by the Coosa Pines Federal Credit Union (“credit union”). The credit union’s action named as a party Howard’s brother, Robert, the primary beneficiary under the contested will, and concerned the ownership of certain deposits that were included as part of Howard’s estate and that were held by the credit union.
Following an ore tenus hearing on January 3,1997, the trial court entered a judgment on March 12,1997, stating:
“[T]he preponderance of the evidence having shown that Jack E. Howard was not mentally competent on September 30, 1994, when the will made the basis of this lawsuit was executed to make a valid last will and testament; IT IS THEREFORE CONSIDERED, ORDERED, ADJUDGED AND DECREED by the Court that Jack E. Howard was not mentally competent on September 30, 1994, to make a valid last will and testament, and that the will dated September 30, 1994, offered for *522 probate in this proceeding is hereby declared invalid.”
Hodges filed a post-judgment motion to alter, amend, or vacate the trial court’s judgment; the trial court denied the motion on June 19, 1997.
Hodges appealed to the Alabama Supreme Court; that Court transferred the appeal to this court, pursuant to Ala.Code 1975, § 12-2-7.
Hodges contends on appeal that the trial court erred in finding that there was substantial evidence that Howard lacked testamentary capacity and in holding that Howard’s will was therefore invalid.
Specifically, Hodges challenges the trial court’s finding that Howard was not mentally competent on September 30, 1994, when he executed the will, arguing that the contestants failed to present substantial evidence that Howard lacked testamentary capacity when he executed the September 1994 will or that Howard had become permanently insane before he executed the September 1994 will.
To execute a valid will, a testator must possess
“ ‘mind and memory sufficient to recall and remember the property [he] was about to bequeath, and the objects of [his] bounty, and the disposition which [he] wished to make—to know and understand the nature and consequences of the business to be performed, and to discern the simple and obvious relation of its elements to each other.’ ”
Bolan v. Bolan, 611 So.2d 1051, 1057 (Ala.1993) (quoting Knox v. Knox, 95 Ala. 495, 503, 11 So. 125, 128 (1892)). “[I]f the testator knows his estate and to whom he wishes to give his property and understands that he is executing a will, he has testamentary capacity.” Smith v. Vice, 641 So.2d 785, 786 (Ala.1994).
Every testator is presumed to have the capacity to make a will, and the burden is on one contesting the validity of the will to prove the testator’s lack of testamentary capacity. Id.
“Unless the contestant presents evidence that the [testator] suffered from a permanent type of insanity prior to the execution of the will ..., the contestant’s burden of proof is met when the jury is reasonably satisfied from the evidence that the [testator] did not have testamentary capacity at the time [he] executed the will.”
Fletcher v. DeLoach, 360 So.2d 316, 318 (Ala.1978).
The record reveals the following pertinent facts. In September 1994, Howard met with his attorney, Rhonda Adams Nolte, to discuss drafting his will. At that meeting, Howard brought a detailed handwritten document for Nolte to review and to incorporate into the final will. This handwritten document was unexecuted and unwitnessed and was, in effect, a detailed holographic will. This handwritten document, among other things, indicated Howard’s intention to revoke his former will, executed in 1987, as well as his intention to appoint Edgar Hodges as his executor; included legal descriptions of real property owned by Howard; directed that his mother and stepfather receive a life estate in the real property; discussed the disposition of his bank accounts; indicated his desire to disinherit his three daughters; and revealed an intent to bequeath his entire estate to his brother, Robert Howard, and his brother’s children.
Nolte testified that after reviewing the handwritten document with Howard, they discussed Howard’s reasons for disinheriting his daughters. Nolte testified that Howard had told her that he was not leaving any property to his daughters because he had had a “falling out” with the daughters in 1989 and had already given them their inheritance. Nolte testified that when she drafted Howard’s will she adhered precisely to the disposition of Howard’s property indicated in the handwritten document.
On September 30, 1994, Howard executed the will. Nolte and another attorney’s secretary, June Middlebrooks, witnessed the will, and Nolte’s secretary, Margaret Blankenship, notarized the self-proving provision of the will. Nolte, Middlebrooks, and Blankenship each testified that, in their opinion, Howard had the capacity to execute the September 1994 will. On September 27, 1995, *523 Howard committed suicide by taking a drug overdose.
The contestants presented three witnesses during the January 1997 hearing: Lester Nicholson, Cathy Walker, and Janice Joiner. These witnesses testified that they believed that Howard had been insane for many years before the execution of the September 1994 will.
Nicholson testified that he had known Howard for 25 years, and that his daughter and Howard’s stepson had been married for 15 years. Nicholson testified that the only relationship that he had had with Howard was that he had occasionally seen him around town and had often spoken to Howard when he saw him on those occasions. Nicholson described Howard as “inconsistent,” “moody,” and “unpredictable.” Nicholson testified that Howard was often intoxicated when he saw him, and that about the time of his suicide Howard “wasn’t taking care of himself’; he further testified that, in his opinion, Howard did not have the mental capacity to make a will. On cross-examination, however, Nicholson stated that he did not know the level of competency that was required to execute a will and that, in his opinion, Howard had been mentally competent to execute a deed.
Cathy Walker testified that Howard was a violent and abusive father and husband; that he was a binge drinker; that he was often irrational and moody; and that, in her opinion, he had never been mentally competent to execute a will or any other document. Walker testified that in 1985 or 1986 Howard deeded the property on which the house in which he resided was located to his three daughters. Walker testified that Howard deeded this property to the daughters because he was divorcing his second wife and he wanted to keep the property out of his marital estate. Howard continued to live in the house after the property was conveyed to his daughters. She stated that after Howard’s divorce, Howard harassed and threatened her in an attempt to get her to recon-vey the property to him. Walker testified that because of these threats, in 1989 she sent Howard a letter stating that he was to vacate the property immediately. She testified that the contestants then sold Howard’s house and divided the proceeds among the contestants. She testified that Howard became very upset when the contestants evicted him and refused to give him any of the proceeds from the sale of the house. Walker testified that since 1989, she had spoken to Howard only once, in December 1993, for approximately 30 minutes.
. Janice Joiner’s testimony paralleled Walker’s testimony concerning Howard’s abusive, violent, and alcoholic nature. She also testified that, in her opinion, Howard was not competent in September 1994 when he executed the will. However, Joiner testified that because of her role in the 1989 eviction and because of other problems, the last conversation she had had with her father was in 1992.
The proponent asserts that the trial court’s judgment invalidating Howard’s will was erroneous because, he says, the contestants failed to show that Howard lacked testamentary capacity when he executed the will or that he had become permanently insane before he executed the will.
Nicholson, Walker, and Joiner testified to many incidents in which Howard had acted irrationally, cruelly, and abusively. However, the contestants presented absolutely no evidence tending to show that Howard did not know the contents of his estate, did not know to whom he wanted to give his property, and did not know the consequences of his actions. See Bolan, supra, 611 So.2d at 1057. Thus, they failed to present substantial evidence that he lacked testamentary capacity.
The contestants also failed to present substantial evidence that Howard was permanently insane before he executed his September 1994 will. Although the contestants presented mental status examination records from Howard’s admission to a veteran’s hospital for treatment for an alcohol problem, those records do not support a finding that Howard was insane. In fact, those records, dated October 1988, December 1990, and January 1991, indicated that Howard was “lucid, cogent, and goal oriented in his thinking” and that his judgment was not impaired. Moreover, before Howard executed the Sep *524 tember 1994 will, he had executed numerous contracts and deeds to third parties, including the deed to the contestants themselves; he had owned and operated his own business; and he had been the sole caretaker of his invalid mother and stepfather.
The opinion testimony of Nicholson, Walker, and Joiner amounts to nothing more than lay evidence that Howard was an abusive, violent, and unpredictable man who had an alcohol problem. However, none of the evidence in this record supports a finding that Howard was permanently insane.
Moreover, the record indicates that Howard’s disinheritance of his daughters was not because of a lack of testamentary capacity or permanent insanity. Rather, there was substantial evidence that Howard disinherited his daughters because they had evicted Howard from his house and had kept the proceeds from the sale of his house for themselves. Based on the above, we conclude that the contestants failed to satisfy their burden of proof.
Accordingly, we hold that the trial court erred in finding that Howard lacked testamentary capacity on September 30,1994, and in declaring Howard’s will invalid. The trial court’s judgment is, therefore, reversed and the cause is remanded for further proceedings.
REVERSED AND REMANDED.
YATES, MONROE, CRAWLEY, and THOMPSON, JJ., concur.