This appeal is from a summary judgment in favor of Central Bank of the South ("Central Bank"), the executor and proponent of the last will and testament of H.F. Cleveland, in a will contest case brought by H.B. Cleveland, the son of the deceased.
Because the evidence, viewed most favorably to the non-movant, lacks the requisite degree of specificity with respect to the "testamentary capacity" ground for contest, we affirm that aspect of the judgment. However, because the evidence of record reveals genuine issues of material fact, suitable for jury resolution, with respect to the "undue influence" ground alleged by the contestant, we reverse that aspect of the judgment and remand the case for trial.
H.F. Cleveland ("Mr. Cleveland") executed his first will on September 10, 1985, bequeathing all of his personal belongings and insurance proceeds to his wife absolutely, if she survived him, and, if not, to his son, H.B. Cleveland ("contestant"). Mr. Cleveland further bequeathed $25,000 to his nephew William Hubbard Baxter, and $20,000 to his brother-in-law J. Pat McClendon. Mr. Cleveland devised and bequeathed the remainder of his property to the trustee of a revocable living trust that he had executed on July 8, 1985, and had later amended, along with the will, on April 30, 1986. Mr. Cleveland named Baxter, McClendon, and Central Bank as executors of his will.
On April 30, 1986, Mr. Cleveland also executed a codicil to his will, omitting the provision that left to Baxter and McClendon the $25,000 and $20,000, respectively. (The codicil made other changes, none of which is relevant here.) Mr. Cleveland died on July 9, 1988. On September 2, 1988, McClendon and Baxter each executed a waiver of notice and a renunciation, declining to serve as executors of Mr. Cleveland's will, leaving Central Bank as the sole executor.
Central Bank offered the will and codicil thereto for probate in the Probate Court of Jefferson County. H.B. Cleveland timely filed a contest to his father's will on the grounds that: (1) "the proposed Will was procured and induced through undue influence exercised upon the said Decedent by William Baxter, J.P. McClendon, and/or Central Bank of the South by and through its representatives and/or employees, and possibly others"; (2) the "decedent was mentally incompetent to make and execute a Will on the date the proposed Will is alleged to have been executed"; and (3) "the decedent was not of testamentary capacity on the date upon which the proposed Will was allegedly executed."
Upon motion by the contestant, the contest was transferred from the Jefferson Probate Court to the Jefferson Circuit Court. Central Bank requested that the *Page 743 
will be admitted to probate and moved for summary judgment. The trial court granted Central Bank's motion and entered a summary judgment for Central Bank, from which the contestant appeals.
 Motion to Strike
Before we discuss the propriety of the summary judgment, we must first consider Central Bank's motion to strike certain documents attached to the appellant's brief. The contestant attached to his brief submitted to this Court a copy of the revocable living trust and the amendment thereto mentioned in Mr. Cleveland's will. Central Bank argues that this trust and amendment were never admitted as evidence in the trial court and, therefore, that these documents should be stricken on appeal. We agree and grant Central Bank's motion to strike.
This Court's consideration of a summary judgment is limited to a review of the record only, and we must review only those matters that were before the trial court when it made its decision. Barnes v. Liberty Mutual Ins. Co.,472 So.2d 1041 (Ala. 1985). The trial court did not have the trust document or the amendment before it when it granted Central Bank's motion for summary judgment, and it would be improper for this Court to consider them now.[1] We will adhere to the longstanding rule, which states:
 " '[T]he Supreme Court is remitted to the consideration of the record alone and absolute truth must be imputed to it, and if it is incomplete or incorrect, amendment or correction must be sought by appropriate proceedings rather than by impeachment on hearing in the appellate court, by statements in brief, by affidavits, or by other evidence not appearing in the record. . . .' "
Clements v. Webster, 425 So.2d 1058, 106162 (Ala. 1982) (quoting Blanton v. Blanton, 276 Ala. 681, 683,166 So.2d 409, 411 (1964)).
 The Merits
Summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law. Rule 56(c) and (e), A.R.Civ.P. Once the movant has made a prima facie showing of the absence of a genuine issue of material fact, the burden is upon the nonmovant to establish the existence of a genuine issue of material fact. Berner v. Caldwell, 543 So.2d 686 (Ala. 1989). Assuming, then, that the movant met its "prima facie" burden, the trial court had to determine whether the contestant met his burden of showing that there existed substantial evidence of undue influence or of Mr. Cleveland's lack of testamentary capacity.
We are unable to discern substantial evidence of Mr. Cleveland's lack of testamentary capacity. Indeed, the only evidence tending to prove lack of mental capacity is to the effect that Mr. Cleveland, from time to time, suffered lapses of memory and that his mental agility was progressively decreasing, traits which, without more, are far too common in elderly persons for the law to accept as evidence of lack of testamentary capacity. Otherwise, a mere showing of those traits common to the aging process would suffice as an inference of lack of testamentary capacity. We decline to so hold.
Because we find the evidence to be of the quality necessary for raising factual issues with respect to the allegations of undue influence, we confine the balance of our discussion to that aspect of the judgment. Further, because the contestant's strongest evidence relates to his allegations of undue influence on the part of McClendon, we confine our review to that evidence.[2]
To establish undue influence, the evidence must show: *Page 744 
 "(1) a confidential relationship between a favored beneficiary and [the] testator; (2) that the influence of or for the beneficiary was dominant and controlling in that relationship; and (3) undue activity on the part of the dominant party in procuring the execution of the will."
Pruitt v. Pruitt, 343 So.2d 495, 499 (Ala. 1976) (citations omitted) (emphasis original). We have defined a "favored beneficiary":
 " 'One who, in the circumstances of the particular case, has been favored over others having equal claim to the testator's bounty. An unnatural discrimination, leading to a natural inference that advantage has been taken by one in position so to do; and shown to have been busy in getting such will executed.' "
Cook v. Morton, 241 Ala. 188, 192, 1 So.2d 890 (1941) (quoted in Pruitt).
The evidence indicates a confidential relationship between Mr. Cleveland and McClendon. McClendon, Mr. Cleveland's brother-in-law, had a power of attorney for Mr. Cleveland. There is substantial evidence that McClendon took charge of the household affairs, wrote Mr. Cleveland's checks, and paid the nurses and other household employees on Mr. Cleveland's behalf. Sadie Sharp, Mr. Cleveland's nurse, testified in deposition that whenever anything needed to be repaired in the house Mr. Cleveland always told her to call McClendon. The evidence shows that McClendon knew the combination to the safe at Mr. Cleveland's manufacturing plant, and, according to Jerry Patterson, a plant employee, McClendon visited the plant on a daily basis, even though he had never been employed by Mr. Cleveland. Clearly, there was a trusting and confidential relationship between Mr. Cleveland and McClendon.
McClendon was a favored beneficiary. McClendon, in the original will, was designated to receive $20,000 upon Mr. Cleveland's death. Although this provision was omitted by the codicil, and the trust instrument was not admitted in evidence, multiple references were made throughout the record to the benefits that McClendon and institutions with which he had strong connections were to receive by virtue of the trust. Even without these references, however, there was sufficient evidence to submit to the jury the issue of undue influence, as it relates to McClendon. It is enough to satisfy the threshold "favored beneficiary" requirement that, at the time of Mr. Cleveland's execution of the challenged will, McClendon was a favored beneficiary, particularly when this issue is viewed in the light of the totality of the evidence.
Sadie Sharp further testified that McClendon came to the house every day to see Mr. Cleveland, many times coming from Mr. Cleveland's manufacturing plant. Sharp stated that Mr. Cleveland would give McClendon papers, such as receipts, from the plant. Jerry Patterson also testified that McClendon had access to the safe where all the financial documents, books, and records of the company were kept, and that Mr. Cleveland had nothing to do with keeping the books and records of the company. From the evidence, a jury could infer that McClendon dominated and controlled Mr. Cleveland during the last years of his life.
The contestant also provided evidence to meet the third prong required to establish undue influence: undue activity on the part of the dominant party. There was evidence that Mr. Cleveland's lawyers had telephone conversations with McClendon regarding the "plan of action" for Mr. Cleveland's will, and that McClendon did not want Mr. Cleveland's son to have any involvement with his father. Sadie Sharp testified that on one occasion, when she had called Mr. Cleveland's son about a repair in the house, McClendon became angry and refused to pay the repair bill out of Mr. Cleveland's funds, and it was ultimately paid by the son. This testimony, viewed with the evidence previously discussed, is sufficient to support an inference of undue activity on the part of McClendon.
Although Central Bank presented strong evidence in opposition to the contestant's claim of undue influence, a factual issue was raised by the evidence, and this issue *Page 745 
was prematurely disposed of by summary judgment. Therefore, that portion of the trial court's judgment pertaining to the issue of undue influence is reversed and the cause is remanded for a trial on that issue.
MOTION TO STRIKE GRANTED; AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HORNSBY, C.J., and SHORES, ADAMS and KENNEDY, JJ., concur.
HOUSTON, J., recused.
[1] Because the referenced materials were never presented to the trial court, and thus could not have been made a part of the record, Rule 10(f), A.R.App.P., is not applicable.
[2] To be sure, we are unable to find a single reference to any conduct on the part of Central Bank that even remotely suggests undue influence.