Larry N. Smith, the proponent of a document he says was the last will and testament of Nellie K. Lowery, appeals from a judgment based upon a jury verdict in favor of the will's contestant, Patsy Vice. Vice, Lowery's daughter, contested the will, contending that Lowery had been unduly influenced and that Lowery had lacked testamentary capacity. The trial court, rejecting Smith's motion for a directed verdict, submitted both issues to the jury. The jury rejected the undue influence claim, but found that Lowery had lacked testamentary capacity. The trial court subsequently denied Smith's motion for a J.N.O.V. or for a new trial and entered a judgment for Vice.
The dispositive issue on appeal is whether the trial court erroneously denied Smith's motion for a directed verdict.
The standard of review applicable to a directed verdict motion is whether the nonmoving party has presented substantial evidence in support of his position. If he has not, then a directed verdict is proper. Bailey v. Avera, 560 So.2d 1038,1039 (Ala. 1990); see Ala. Code 1975, § 12-21-12(a). Substantial evidence is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida,547 So.2d 870, 871 (Ala. 1989). The ultimate question is whether the nonmovant has presented substantial evidence to allow submission of the case or issue to the jury for a factual resolution. Carter v. Henderson, 598 So.2d 1350 (Ala. 1992).
To establish a prima facie case of undue influence, the contestant must show that a confidential relationship existed between a favored beneficiary and the testator; that the beneficiary's influence was dominant and controlling in the relationship; and that there was undue activity on the part of the dominant party in procuring the execution of the will.Bolan v. Bolan, 611 So.2d 1051 (Ala. 1993); Clifton v. Clifton,529 So.2d 980 (Ala. 1988).
We further note that it is presumed that every person has the capacity to execute a will, and the burden was upon Vice, the contestant, to establish that the testatrix did not have this capacity. Bolan, supra. The standard for finding testamentary capacity is not a high one; instead, the testatrix need only have
 " 'mind and memory sufficient to recall and remember the property she was about to bequeath, and the objects of her bounty, and the disposition which she wished to make — to know and understand the nature and consequences of the business to be performed, and to discern the simple and obvious relation of its elements to each other. . . .' "
Fletcher v. DeLoach, 360 So.2d 316, 318 (Ala. 1978), quotingKnox v. Knox, 95 Ala. 495, 503, 11 So. 125, 128 (1892). Simply stated, if the testator knows his estate and to whom he wishes to give his property and understands that he is executing a will, he has testamentary capacity. See 79 Am.Jur.2d Wills, § 71 (1975); Dees v. Metts, 245 Ala. 370, 17 So.2d 137 (1944);Eastis v. Montgomery, 95 Ala. 486, 11 So. 204 (1892). A person may execute a valid will, even if he or she is not competent to transact ordinary, everyday affairs. Harper v. Mason,571 So.2d 295 (Ala. 1990). Further,
 " '[t]he burden is on the contestant to show incapacity at the time the will was made and insanity prior to that time, unless of a permanent character, raises no presumption *Page 787 
of insanity at the time the will was made.' "
Fletcher, 360 So.2d at 318, quoting King v. Aird, 251 Ala. 613,617, 38 So.2d 883, 887 (1949). Accordingly, the burden "can only be discharged or shifted by showing prior habitual or fixed insanity, or actual insanity, or other incapacity at the date of the instrument." Eastis, 95 Ala. at 494, 11 So. at 211.
On May 23, 1978, Nellie K. Lowery, then a resident of Gadsden, Alabama, executed a document styled as her last will and testament. By that document Lowery willed nothing to Vice, her only child and now the contestant of the will. Instead, Lowery named Larry N. Smith, her nephew and now the proponent of the will, as the executor and sole beneficiary of her estate. Lowery died on October 2, 1989. Smith petitioned the Etowah County Probate Court on October 3, 1989, to probate the will. On October 31, 1989, Vice contested the will; the will contest was transferred to the Etowah Circuit Court pursuant to Ala. Code 1975, § 43-8-198. The contest went to trial before a jury.
Vice produced evidence that Lowery had been treated for depression in the early 1960s. There was also evidence that indicated that Vice developed symptoms of a drinking problem after her husband died in 1974. The record demonstrates that Lowery's relationship with Vice during the years before Lowery's execution of the will was tumultuous. Their conflicts came to a head on May 5, 1978, when Lowery's trailer home burned. At that time, Patsy Vice swore out a lunacy warrant for Lowery because, she says, Lowery "was getting mentally sick and she had an alcoholism problem and I didn't know which was worse." The police detained Lowery on that warrant; she was examined in jail and was released on May 8, 1978, after "drying out" from alcohol. Lowery was released into Larry Smith's custody. As indicated above, Lowery executed her will only days later, on May 23, 1978.
At trial, Vice produced several witnesses who testified that Lowery's behavior was erratic in the months before she executed her will. There was also evidence to indicate that Lowery's drinking became a greater problem before the execution of the will. However, Vice produced no evidence that indicated that Smith was dominant and controlling in his relationship with Lowery; nor was any evidence submitted to show that Smith influenced Lowery to will her estate to him. The trial court erred in denying Smith's motion for a directed verdict on the undue influence issue. See Bolan, supra.
Further, while the evidence tends to demonstrate that Lowery had occasionally suffered from symptoms of mental illness and from a drinking problem, Vice did not produce substantial evidence that Lowery was incapacitated at the time she executed the will. Lowery's action to will her entire estate to Smith came only days after Lowery had been arrested on the lunacy warrant sworn out by Vice. Lowery was released into Smith's custody, and upon her release Smith took Lowery to the home of his mother and father. Whether Lowery's decision to will nothing to Vice, and to will her entire estate to Smith, was right or wrong is not for this Court to decide. Instead, we must look only toward whether Lowery, at the time she executed the will, had the capacity to execute it. The fact that Lowery willed the property as she did and the fact that she executed the will so soon after the lunacy arrest tend to indicate that Lowery did have "mind and memory sufficient to recall and remember [her] property . . . and the disposition which she wished to make" of that property. Fletcher, 360 So.2d at 318. Lowery's failure to will property to Vice appears to be logically attributable to what one might suppose was Lowery's adverse reaction to Vice's having her arrested on the lunacy warrant; thus, that failure to leave property to Vice should not be viewed as a product of mental illness or alcoholism. An insane delusion is distinguishable from a belief that is founded upon prejudice or aversion, no matter how unreasonable or unfounded the prejudice or aversion may be. See Coffey v.Miller, 160 Ky. 415, 169 S.W. 852 (1914). It seems clear that Lowery believed that she had been treated harshly by Vice when Vice swore out the lunacy warrant; this appears to have led Lowery to will her estate to Smith. The fact that, in a discordant family, a testatrix may perceive her daughter's actions in obtaining a *Page 788 
lunacy warrant for her arrest as unfavorable, and accordingly will nothing to the daughter, simply does not indicate a lack of testamentary capacity. See 79 Am.Jur.2d Wills, § 95 (1975).
Further, although much of Vice's evidence dealt with Lowery's drinking, there was no proof that Lowery was intoxicated when she executed the will. Moreover, even if there had been such proof, this would not be conclusive evidence that she lacked the capacity to execute the will.
 "The fact that the testator is under the immediate influence of intoxicating liquor or drugs at the time he performs the testamentary act does not invalidate his will on the ground of lack of testamentary capacity, provided that he then comprehends the nature, extent, and disposition of his estate and his relation to those who have or might have a claim on his bounty; and clearly, a person addicted to the use of drugs or liquor, if lucid and sober when a will is made, does not lack testamentary capacity merely by reason of the habit. . . . Habitual drunkenness does not give rise to a presumption that the testator was incapacitated at the time he executed the will."
79 Am.Jur.2d Wills, § 83 (1975).
Smith produced several witnesses who stated that Lowery was of sound mind near the time when she executed the will. The witnesses included the attorney who had drafted the will and who had been one of the witnesses to Lowery's execution of the will; the attorney said he had observed nothing strange about her conduct at that time. As stated above, however, it is the contestant's burden to prove the will's invalidity, not the proponent's burden to show its validity. See Bolan, supra. Vice, as the contestant, did not meet her burden by presenting substantial evidence to defeat Smith's motion for a directed verdict on the testamentary capacity issue.
Because Vice did not present substantial evidence of undue influence or of incapacity, the trial court should have directed a verdict for Smith on both issues. Therefore, the judgment of the trial court is reversed, and a judgment is rendered in favor of Smith.
REVERSED AND JUDGMENT RENDERED.
HORNSBY, C.J., and HOUSTON, STEAGALL and COOK, JJ., concur.
MADDOX, ALMON and KENNEDY, JJ., dissent.