709 So.2d 7 (1997)
Ex parte John C. BAKER, Jr.
(Re Sue FINCHER v. John C. BAKER, Jr.).
1960569.
Supreme Court of Alabama.
November 21, 1997.
*8 Joseph L. Dean, Jr., of Dean & Barrett, Opelika, for petitioner.
James S. Hubbard, Anniston; and William Henry Agee, Anniston, for respondent.
SEE, Justice.
This case arises out of the contest of Mary Fincher's will on the grounds of undue influence and lack of testamentary capacity. By a general verdict, the jury found Mary's will invalid. The proponent appealed the trial court's denial of her motions for a directed verdict and for a judgment notwithstanding the verdict ("JNOV"). The Court of Civil Appeals reversed, holding that the contestant failed to present substantial evidence as to either challenge to the will's validity. Fincher v. Baker, 709 So.2d 1 (Ala.Civ.App.1996). Because we hold that the contestant presented substantial evidence of undue influence, but not of a lack of testamentary capacity, we affirm in part, reverse in part, and remand.
Mary had two children, Jack and Rebecca, both of whom predeceased her. Mary had three grandchildren by her son Jack and two grandchildren by her daughter Rebecca.
Viewed in the light most favorable to the nonmovant, the evidence further showed: In 1978, Mary's long-time and trusted attorney prepared a will leaving approximately one-half of her estate to Jack's children and one-half of her estate to Rebecca's children. The will also provided for specific devises of Mary's personal residence and a greenhouse to Rebecca's children. After she executed this will, Mary executed a power of attorney to Sue Fincher, who is Jack's widow (Mary's daughter-in-law).
Sue Fincher's influence over Mary in regard to Mary's financial and medical affairs steadily increased. In January 1981, Sue Fincher's lawyer, who had never prepared any testamentary documents for Mary, prepared a codicil for Mary's 1978 will; that codicil shifted the devise of the greenhouse from Rebecca's children to Jack and Sue Fincher's children.
In early November 1981, after the death of Rebecca's daughter, Mary became almost totally dependent on Sue Fincher in regard to financial decisions. In late November 1981, Sue Fincher's lawyer prepared, and Mary executed, a new will that shifted one-quarter of Mary's residuary estate from the children of Rebecca's deceased daughter (Mary's great-grandchildren) to Sue's children.[1] In December 1981, Sue Fincher's lawyer prepared, and Mary executed, a codicil that shifted an interest in Mary's personal residence from Rebecca's remaining child, John Baker, to Sue Fincher's children. In January 1982, Sue Fincher's lawyer prepared, and Mary executed, a new will that consolidated the shifts of interests from Rebecca's children to Sue Fincher's children. Great care was taken to assure that Mary's capacity to execute this will was supported by significant evidence of testamentary capacity. Sue Fincher's lawyer arranged to have four witnesses, a psychiatrist, and a court reporter present, and to videotape the signing formalities.
Finally, in June 1982, Sue Fincher's lawyer prepared, and Mary executed, a codicil to the 1982 will; that codicil shifted the remaining interest of Rebecca's children in Mary's residuary estate to Sue Fincher's children. After this flurry of testamentary activity, Mary executed no further wills or codicils before her death in 1994.
*9 When Sue Fincher attempted to probate the 1982 will and codicil, John Baker (Rebecca's son and Mary's grandson), contested the will on grounds of undue influence and lack of testamentary capacity, and he contested the codicil on the basis of fraud. The jury returned a general verdict invalidating the 1982 will, and thus did not reach the fraud issue regarding the codicil to that will. After the Court of Civil Appeals reversed, John Baker petitioned for certiorari review, contending that he did present substantial evidence of undue influence and lack of testamentary capacity. We granted that review. Our review is limited to determining whether John Baker presented substantial evidence to support his allegations of undue influence and lack of testamentary capacity. Ex parte Toyota Motor Corp., 684 So.2d 132, 135 (Ala. 1996); K.S. v. Carr, 618 So.2d 707, 713 (Ala. 1993).

Undue Influence
A presumption of undue influence arises when: (1) there is a confidential relationship between a favored beneficiary and the testator; (2) there is a dominant and controlling influence by the beneficiary over the testator; and (3) there is undue activity in procuring the execution of the will. Allen v. Sconyers, 669 So.2d 113 (Ala.1995).
First, the parties to this action acknowledge that Sue Fincher and her sons, who were favored beneficiaries, had a confidential relationship with Mary. Second, the evidence indicates that Sue Fincher had a dominant and controlling influence over Mary. Sue Fincher testified that Mary was almost totally dependent on her after the death of Rebecca's daughter in October 1981. Further, John Baker introduced evidence indicating that although Mary was a strong-willed lady, Sue Fincher controlled Mary's household, medical, and financial affairs and that when Sue Fincher was not available to make decisions for Mary, one of Sue Fincher's sons would make those decisions. Sue Fincher had also obtained Mary's power of attorney. See Cleveland v. Central Bank of the South, 574 So.2d 741, 744 (Ala.1990) (stating that a genuine issue of material fact existed as to undue influence where the beneficiary, among other things, had the testator's power of attorney and took charge of household affairs).
As to the third factor in creating a presumption of undue influence, however, Sue Fincher contends there is no evidence to show that she played an active role in procuring the execution of Mary's 1982 will. In fact, the record is replete with evidence that would tend to indicate that she was active in procuring the execution of Mary's 1982 will. Sue Fincher's lawyer prepared all the codicils and wills that Mary executed in 1981 and thereafter. Sue Fincher denied having knowledge of Mary's wills or having had discussions with her attorney concerning Mary's wills and codicils. John Baker, however, introduced documentary evidence indicating that Sue Fincher knew of Mary's prior wills, and Sue Fincher's lawyer testified that Sue Fincher and her son had contacted him several times concerning the wills and codicils that Mary executed in 1981 and 1982. Further, Sue Fincher stated that she had purposely avoided the meeting at which Mary executed the 1982 will, for which Sue's attorney had procured a court reporter and video camera to record the signing. The jury could infer from this evidence that Sue Fincher had indeed engaged in undue activity with respect to Mary's 1982 will. See Cleveland, 574 So.2d at 744-45. Accordingly, we hold that John Baker presented substantial evidence indicating that Sue Fincher and her sons exercised undue influence over Mary in procuring the execution of her 1982 will. See Sconyers, 669 So.2d at 117.[2]

*10 Testamentary Capacity

Testamentary capacity requires that the testator possess
"mind and memory sufficient to recall and remember the property she was about to bequeath, and the objects of her bounty, and the disposition which she wished to maketo know and understand the nature and consequences of the business to be performed, and to discern the simple and obvious relation of its elements to each other."
Bolan v. Bolan, 611 So.2d 1051, 1057 (Ala. 1993) (citing Knox v. Knox, 95 Ala. 495, 11 So. 125 (1892), and Fletcher v. DeLoach, 360 So.2d 316, 318 (Ala.1978)). It is presumed that every person has the capacity to make a will. Smith v. Vice, 641 So.2d 785, 786 (Ala. 1994).
John Baker presented evidence indicating that Mary had experienced mental problems approximately two years before she executed her 1982 will. He also showed that on the day Mary executed the will, she could not remember the exact number of her great-grandchildren and had trouble counting backward by 7s from 100.
Mary's physician, however, stated that Mary had made excellent progress in overcoming her previous problems and that she was in good mental condition shortly before and shortly after she executed the 1982 will. Before Mary executed the will, it was read to her. Two witnesses present when Mary executed the will testified that they believed Mary was fully aware of what she was doing.
This case is different from Bolan, supra, in which this Court found a lack of testamentary capacity. In this case there was no testimony from witnesses who believed Mary's mental state was unsound, no testimony that Mary's condition had been deteriorating for several months, and no testimony that Mary's physical or mental condition had worsened. To the contrary, the evidence indicates that Mary's condition was continually improving from the time of her hospital discharge in 1980 until she executed the will in 1982. The lapses in memory cited by Baker were mere isolated events that are far too common in the general population to support a finding of a lack of testamentary capacity. Cleveland, 574 So.2d at 743. We hold that Baker failed to present substantial evidence that Mary lacked testamentary capacity when she executed her 1982 will.
Because Sue Fincher challenged both the undue influence count and the testamentary capacity count in her motions for directed verdict and JNOV, the jury's general verdict cannot stand. See Aspinwall v. Gowens, 405 So.2d 134, 139 (Ala.1981). We therefore affirm that portion of the judgment of the Court of Civil Appeals regarding the testamentary capacity count, reverse that portion of the judgment regarding the undue influence count, and remand the cause for the Court of Civil Appeals to order further proceedings not inconsistent with this opinion.[3]
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
MADDOX and COOK, JJ., concur.
HOOPER, C.J., concurs specially.
KENNEDY, J., concurs in the result.
SHORES, J., concurs in part and dissents in part.
*11 BUTTS, J., dissents.
HOUSTON, J., recuses himself.
HOOPER, Chief Justice (concurring specially).
I have wrestled with this case because I believe that in invalidating this will the jury probably relied upon a thought that the testatrix had been subjected to "undue influence," perhaps combined with a recognition that she had a weakened mental state. However, I cannot say with certainty that these thoughts entered the juror's minds and dictated their verdict. In light of this Court's previous decisions considering such questions as this case presents, I must rely upon the wisdom of our learned Justices who in the past concluded that cases like this should be remanded to determine the exact basis of the jury's decision. Where the defendant has challenged one or more counts of a multiple-count complaint by a motion for directed verdict and "yet good counts and bad counts go to the jury and the jury returns a general verdict, this Court cannot presume that the verdict was returned on a good count." South Central Bell Tel. Co. v. Branum, 568 So.2d 795, 798-99 (Ala.1990); National Sec. Fire & Cas. Co. v. Vintson, 454 So.2d 942 (Ala.1984); Aspinwall v. Gowens, 405 So.2d 134 (Ala.1981).
This line of cases leads me to only one conclusion. Because this Court does not have the ability to read the minds of the jurors, we should send cases like this back, with instructions to learn what the jurors were really thinking when they reached their verdict.
SHORES, Justice (concurring in part and dissenting in part).
I concur in the holding that the contestant presented substantial evidence of undue influence, and I agree that the judgment of the Court of Civil Appeals must be reversed and this case remanded for a new trial.
The main opinion also holds, however, that the contestant failed to present substantial evidence indicating that Mary Fincher lacked testamentary capacity when she executed the 1982 will. I disagree. There was evidence that before September 24, 1979, Mary Fincher had suffered from "advanced arterial sclerotic brain disease." After hospitalization in 1980, she was found to be suffering from "chronic cerebrovascular insufficiency with repeated transient ischemic attack and brain damage with total confusion and incompetence." There was evidence that when Mary Fincher executed her will, she did not know who several of her family members were, even though those family members were frequent visitors. There was evidence that she said that only one of her grandsons, Buster, was married, and that she specifically said that the others were not married, although her grandson John Baker, Jr., was married and had two children. This evidence was properly submitted to the jury on the issue of testamentary capacity. Smith v. Vice, 641 So.2d 785, 786 (Ala.1994).
NOTES
[1] There was evidence indicating that Mary had stated she did not want to leave money to her deceased granddaughter's children because she did not want to undertake financial responsibility for a third generation of her family.
[2] We note that Sue Fincher contends that Mary had a valid business reason for executing the June 1982 codicil, which shifted the remaining portion of Mary's estate from Rebecca's child, John Baker, to Sue Fincher's children. Sue states that Mary had previously sold a substantial amount of stock to Rebecca in exchange for long-term installment notes with low fixed interest rates. Rebecca placed a substantial amount of cash in escrow. The interest earned on this cash was used to make the payments on the installment notes to Mary. When interest rates rose, Mary demanded that the executors of Rebecca's estate increase the interest rate on the installment notes and thus increase the payments to her. The executors abided by the interest rate provided in the installment notes and did not increase the payments to Mary. John Baker, a beneficiary of Rebecca's estate, received the benefit of the difference between the low interest rates that the escrowed funds were paying and the high interest rates that the escrowed funds were earning. This, however, fails to explain the numerous shifts of interests in Mary's estate away from Rebecca's children before June 1982. It also fails to explain the evidence indicating that Sue Fincher instigated Mary's execution of the June 1982 codicil by telling her that it was unfair for Rebecca's children to earn the interest rate differential by maintaining the low interest rate to which Mary had originally agreed.
[3] We need not address whether the June 1982 codicil was the subject of fraud. The trial court instructed the jury that if it found the January 1982 will invalid because of a lack of testamentary capacity or because of undue influence, then it did not need to reach the issue of fraud as to the June 1982 codicil. The jury returned a general verdict declaring the January 1982 will invalid, and thus did not address the fraud issue concerning the June 1982 codicil. On remand, the fraud issue may be raised again.