Rel: March 21, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2024-2025

_____

### SC-2024-0156

_____

**Kesean Boykin, Magen Brooke Grimes, Joseph Cain Culpepper, and Tracey Grimes**

**v.**

**Beatrice Land**

_____

### SC-2024-0190

_____

**Beatrice Land**

**v.**

**Kesean Boykin, Magen Brooke Grimes, Joseph Cain Culpepper, and Tracey Grimes**

**Appeals from Russell Circuit Court**
**(CV-21-900024)**

SELLERS, Justice.

Kesean Boykin, Magen Brooke Grimes, Joseph Cain Culpepper, and Tracey Grimes ("the proponents") appeal from a judgment of the Russell Circuit Court, entered after a jury trial, in favor of Beatrice Land ("Beatrice") in an action in which Beatrice contested the validity of a will and a deed that her sister, Nancy Walker ("Nancy") had executed in 2020.[1] Beatrice cross-appeals from the circuit court's refusal to award her costs incurred in challenging the will. We affirm the circuit court's judgment to the extent that it invalidates the will, reverse the circuit court's judgment to the extent that it invalidates the deed, reverse the circuit court's denial of Beatrice's request for an award of costs, and remand the matter for further proceedings.[2]

---

[1]The proponents are people who stand to inherit property under the will that has been contested in this case.

[2]Joseph Don Mirabella, who sought to be appointed by the Russell Probate Court as the personal representative of Nancy's estate, originally joined Beatrice in her action contesting the will and the deed in question.

2

Procedural Background

In 2011, Nancy executed a will ("the 2011 will"). In the 2011 will, Nancy left personal property to her stepchildren and to her sister, Beatrice. She also left certain specific real property to Beatrice ("the subject property"), left other real property to her stepchildren, and left the residue of her estate to Beatrice. The 2011 will named Beatrice as the personal representative of Nancy's estate, and, along with executing the 2011 will, Nancy granted Beatrice a general power of attorney over Nancy's affairs and made Beatrice Nancy's health-care proxy for purposes of making medical decisions on her behalf.

In April 2020, Nancy executed a new will ("the 2020 will"), which the parties agree devised the subject property to Nancy's stepgranddaughter, Magen Grimes ("Magen"), and Magen's husband, Joseph Culpepper ("Culpepper"). The 2020 will named Magen as the personal representative of Nancy's estate. Along with executing the 2020

---

He was, however, dismissed from the action and is not a party to this appeal. It also appears that Beatrice and Mirabella attempted to include Nancy's estate as a party to the will and deed contest. There is, however, nothing indicating that either of those parties had the authority to make the estate a party. This Court has restyled this appeal and cross-appeal accordingly.

3

will, Nancy also executed a deed gifting what the parties agree is the subject property to Magen and Culpepper ("the 2020 deed").[3] At that time, Magen, Culpepper, and their children had been living with Nancy, who was in poor health, on the subject property for approximately five months. The 2020 will left other assets to Nancy's other stepgrandchildren, who were also made parties to this action.

Nancy died three weeks after she executed the 2020 will and the 2020 deed. Beatrice, who was named as the personal representative of Nancy's estate in the 2011 will, declined to serve. Joseph Don Mirabella, who is Beatrice's son-in-law, was named in the 2011 will as an alternative personal representative. He petitioned the Russell Probate Court to admit the 2011 will for probate and to grant him letters testamentary with respect to Nancy's estate. In his petition to probate the 2011 will, Mirabella noted the existence of the 2020 deed and requested that the

_____

[3]The language in the 2011 will, the 2020 will, and the 2020 deed is somewhat unclear as to whether all three instruments refer to the subject property. The 2011 will refers to "[a]ll of [Nancy's] real property which [she] may own at [her] death in Glennville, Alabama." The 2020 will refers to "property [Nancy owned] located at 6163 Glennville Highway, Pittsview, Alabama." The 2020 deed identifies four parcels of real property by their specific legal descriptions. In any event, there appears to be no dispute that, in relevant part, the 2011 will, the 2020 will, and the 2020 deed all refer to the subject property.

probate court declare it void based on Nancy's alleged unsound mind, as well as Magen's and Culpepper's alleged undue influence over Nancy, at the time Nancy executed the deed. Although Mirabella also acknowledged that he and Beatrice had been informed of the existence of the 2020 will, he noted that he did not have a copy of that will, and he did not specifically ask the probate court to declare it invalid.

Approximately one month later, Magen filed a petition requesting the probate court to admit the 2020 will for probate and to appoint her as the personal representative of Nancy's estate. In response, Mirabella filed a motion to strike Magen's petition, asserting that Magen had falsely asserted that she was Nancy's biological granddaughter and Nancy's next of kin when, in reality, Magen was Nancy's stepgranddaughter. Mirabella did not specifically ask the probate court to declare the 2020 will invalid.

Notwithstanding Mirabella's motion to strike, the parties stipulated in January 2021 that the 2020 will would be admitted for probate and that Magen would be named as the personal representative of Nancy's estate. Approximately one month after stipulating to the admission of the 2020 will for probate, Mirabella, joined by Beatrice, filed

5

a petition in the circuit court, which was titled "petition for removal and complaint to set aside will and complaint for damages." In their petition, Mirabella and Beatrice asked the circuit court to invalidate both the 2020 will and the 2020 deed. They asserted that Nancy had been of unsound mind and under improper undue influence when she had executed those instruments. Although they did not expressly and specifically ask that the administration of Nancy's entire estate be removed to the circuit court, they did ask that the 2011 will be admitted for probate and that Mirabella be appointed as the personal representative of Nancy's estate. As discussed below, however, they did not meet the formal requirements for the removal of the administration of an estate from probate court to circuit court.

The proponents filed a motion to dismiss Mirabella and Beatrice's action, asserting that the circuit court did not have subject-matter jurisdiction over that action. Thereafter, the circuit court entered an order dismissing Mirabella from the case and concluding that, "[c]onsequently, defendants' 'Motion to Dismiss for Lack of Subject Matter Jurisdiction' is dismissed." The matter proceeded to a jury trial, during which Beatrice limited her legal theory to Nancy's alleged lack of

6

testamentary capacity to execute the 2020 will and the 2020 deed. The jury rendered a verdict finding that the 2020 will and the 2020 deed "are not the valid deed and last will and testament of [Nancy]." The circuit court entered a judgment on the jury's verdict and denied the parties' postjudgment motions. The proponents appealed. Beatrice cross-appealed.

## Discussion

### Jurisdiction Over the Will Contest

In their brief on appeal, the proponents assert that the circuit court did not acquire subject-matter jurisdiction over the will contest. They point to §§ 43-8-190 and 43-8-198, Ala. Code 1975, which, when read together, allow for the transfer to a circuit court of a will contest that has been commenced in a probate court, but only if the will in question had not yet been admitted for probate when the will contest was commenced in the probate court. See Daniel v. Moye, 224 So. 3d 115, 135 (Ala. 2016) ("Section 43-8-190[, Ala. Code 1975,] provides for a contest before a will is admitted for probate, and § 43-8-198, Ala. Code 1975, which must be read in tandem therewith, provides for the 'transfer' of a pre-admission contest, properly ordered by the probate court, to the circuit court."

7

(emphasis omitted)). Because Beatrice and Mirabella's petition in the circuit court was not filed until after the 2020 will had been admitted for probate, the proponents assert that the circuit court could not have obtained subject-matter jurisdiction over a will contest under §§ 43-8-190 and 43-8-198. They also assert that the administration of Nancy's entire estate was not removed to the circuit court under § 12-11-41, Ala. Code 1975, because Mirabella and Beatrice did not satisfy the formal requirements for the removal of an estate administration.

For her part, Beatrice concedes that the administration of Nancy's estate was not removed to the circuit court under § 12-11-41 and that a will contest was not transferred to the circuit court under §§ 43-8-190 and 43-8-198. Instead, she asserts that her and Mirabella's petition in the circuit court was filed pursuant to § 43-8-199, Ala. Code 1975, which allows for a will contest to be commenced in circuit court, after the will has been admitted for probate, by a person who has not yet contested the will in question, as long as the petition is filed in the circuit court within six months after admission of the will for probate. Branch v. Branch, 347 So. 3d 239, 242 (Ala. 2021). In anticipation of that argument, the proponents assert that Mirabella had already contested the 2020 will

8

when he and Beatrice commenced the action in the circuit court and that, accordingly, a will contest could not be commenced under § 43-8-199.

It is not entirely clear that Mirabella's filings in the probate court, which the proponents claim constituted a will contest, actually asked the probate court to declare the 2020 will invalid. It is at least noteworthy that this Court has said that "[i]t is plain under our statute and our case law that a will must have been 'offered for probate' before it can be contested in either the probate or the circuit court." Hooper v. Huey, 293 Ala. 63, 67, 300 So. 2d 100, 104 (1974), disapproved of on other grounds in Bardin v. Jones, 371 So. 2d 23 (Ala. 1979). Mirabella's petition to admit the 2011 will for probate, which the proponents suggest constituted a will contest, was filed before the 2020 will was offered for probate. The proponents also suggest that Mirabella's motion to strike Magen's petition to admit the 2020 will for probate constituted a will contest, but the motion to strike simply alleged that Magen had misrepresented her status as Nancy's biological granddaughter and as next of kin. In any event, there does not appear to be a dispute between the parties that Mirabella contested the validity of the 2020 will in the probate court.

Regardless, <u>Beatrice</u> was not a party to Mirabella's probate-court filings. Thus, she clearly did not commence a will contest in the probate court and therefore was entitled to do so in the circuit court. On that point, however, the proponents claim that Beatrice "aided and abetted" Mirabella in contesting the 2020 will in the probate court and therefore was prohibited from contesting it in the circuit court.

The proponents have not demonstrated that the relevant law and evidence precluded Beatrice from commencing a will contest in the circuit court because she "aided and abetted" Mirabella. In their opening brief, the proponents point to <u>Knox v. Paull</u>, 95 Ala. 505, 510, 11 So. 156, 158 (1892), for the proposition that those who "aid[] and abet[]" a will contestant in probate court "become jointly responsible with him for what was done in his name alone, but really for their common benefit." The proponents provide no further discussion of the facts or result reached in <u>Knox</u> with respect to aiding and abetting a will contest. They also concede that the Court in <u>Breeding v. Grantland</u>, 135 Ala. 497, 33 So. 544 (1903), "seemed to say" that a person's aiding and abetting a will contest in probate court does not preclude that person from challenging the will in circuit court. <u>See</u> <u>also</u> <u>Alexander v. Alexander</u>, 230 Ala. 170, 173, 160

So. 343, 346 (1935) (citing, among other cases, <u>Breeding</u>, and noting that "any one not a contestant in the probate court, although aiding and promoting the contest in such court, is still entitled to contest in chancery"). The proponents ask us to overrule <u>Breeding</u> (and, we assume, other opinions that might have relied upon it). We decline to do so.

The evidence does not indicate that Beatrice significantly "aided and abetted" Mirabella. The proponents point out that Beatrice and Mirabella met with the attorney who drafted the 2011 will, that Beatrice declined to serve as personal representative, that she asked Mirabella to go to the subject property to retrieve the 2011 will, and that she "provided [Mirabella] with information he could use to support his allegations that the 2020 will was invalid." Proponents' brief at 41.[4] We are not convinced by the proponents' argument that these preliminary actions on the part of Beatrice should essentially make her a party to Mirabella's alleged will contest in the probate court.[5]

---

[4]The proponents do not reveal in this portion of their brief exactly what "information" Beatrice provided Mirabella to support his allegations regarding the 2020 will.

[5]The proponents assert that "modern notions of issue preclusion" support the idea that a party who "aids and abets" a will contestant in probate court should essentially be considered a contestant of that will

The proponents also note that Beatrice and Mirabella did not expressly state in their circuit-court petition that "'the will has not been contested previously under other provisions of the law.'" Proponents' brief at 39 (quoting Segrest v. Segrest, 328 So. 3d 256, 277 (Ala. 2020)). But the materials before the circuit court, which the proponents claim show that Mirabella had commenced a will contest in the probate court, clearly established that Beatrice did not commence a will contest in the probate court. The Court in Segrest forgave the petitioner's failure in that case to expressly assert that the will in question had not yet been challenged because the circuit court in Segrest was in possession of the probate court's entire file pursuant to the removal of the administration of the estate in question, and the materials in that file demonstrated that no will contest had been commenced when the circuit-court proceedings began. Although the administration of Nancy's estate in the present case was not removed to the circuit court, the very documents upon which the proponents rely in arguing that a will contest had been commenced in the

---

and barred from proceeding in circuit court under § 43-8-199. Because we decline to overrule the precedent referenced above, which is consistent with the language of § 43-8-199, and because we conclude that Beatrice did not significantly "aid and abet" Mirabella in his alleged will contest, we do not discuss the proponents' issue-preclusion reasoning.

probate court demonstrate that Beatrice did not commence a will contest in the probate court. In fact, Beatrice represents, without contradiction from the proponents, that the circuit court <u>was</u> in possession of the probate court's entire file. Based on all the circumstances, we conclude that the circuit court had jurisdiction over the will contest.

<u>Jurisdiction Over the Deed Contest</u>

The proponents assert that, even if the circuit court had jurisdiction over the will contest, it did not have jurisdiction over the challenge to the validity of the 2020 deed. In support, they point to <u>Branch</u>, supra. In that case, some of a decedent's children, who had been omitted from the decedent's will, challenged in the probate court the validity of that will, as well as inter vivos transfers of real and personal property the decedent had made to the sole beneficiary of his will before the decedent died. Later, the omitted children filed a petition in the circuit court making the same challenges to the will and to the transfers of property. On appeal, this Court held that the circuit court neither had acquired subject-matter jurisdiction over the will contest pursuant to any of the applicable statutes allowing for challenges to a will in a circuit court, including § 43-8-199, nor had obtained jurisdiction, via removal from the probate court,

13

of the administration of the decedent's estate. Thus, this Court held, the circuit court was without authority to resolve the dispute over the validity of the decedent's will.

Relevant to the present case, the omitted children in Branch argued that, regardless of the status of the will contest, the circuit court had jurisdiction over the challenges to the inter vivos transfers of property the decedent had made because, the omitted children argued, the probate court would not have had jurisdiction over that equitable matter. This Court rejected that argument, reasoning as follows:

> "The omitted children also assert that the circuit-court action was equitable in nature and was not a will contest. More specifically, the omitted children assert that their request to cancel conveyances of real and personal property and their request for a temporary restraining order [enjoining the waste of estate assets] were equitable in nature and that, because the probate court does not have equitable jurisdiction, they were required to seek that relief in the circuit court. See Daniel v. Moye, 224 So. 3d 115, 140 (Ala. 2016) (explaining that, with the exception of a few counties, probate courts lack equitable jurisdiction). The omitted children's argument fails for several reasons. As explained above, the omitted children commenced the circuit-court action by filing a petition to contest the will. Insofar as the omitted children attempted to join claims challenging the previous execution of deeds and other transactions related to the [decedent's] estate, this Court has held that a will-contest action is limited to determining the validity of the will and that other claims, such as those to cancel deeds, are not properly joined in a will-contest action. See Ex parte Walter,

14

202 Ala. 281, 284, 80 So. 119, 122 (1918) (holding that matters concerning the execution of a deed and the sale of personal property were collateral and immaterial in a will-contest proceeding); and <u>Nesmith v. Vines</u>, 248 Ala. 72, 73, 26 So. 2d 265, 266 (1946)(same); see also <u>Daniel v. Moye</u>, 224 So. 3d at 140 (holding that 'the circuit court would have subject-matter jurisdiction over properly pleaded claims for an accounting and alleging improper inter vivos transfers ... as part of the general administration of [a decedent's] estate' only in a properly transferred action to administer an estate)."

347 So. 3d at 243-44.

In the present case, unlike in <u>Branch</u>, we have determined that the will contest <u>was</u> properly commenced in the circuit court under § 43-8-199. But the <u>Branch</u> Court's statements regarding a circuit court's limited jurisdiction in a will contest nevertheless would seem to apply here. The reasoning in <u>Branch</u> suggests that the circuit court in the present case was limited to deciding whether the 2020 will was valid and that the circuit court did not have authority to determine whether the 2020 deed was valid. Beatrice offers no response to the proponents' reliance on <u>Branch</u>; she does not acknowledge that case or attempt to distinguish it. <u>See also Daniel</u>, 224 So. 3d at 140 ("An equitable accounting claim is not proper in a will contest brought under § 43-8-199 because the 'sole and only appropriate purpose' of a proceeding brought under that section is the contest and possible revocation of a will already

admitted for probate. <u>Kelley v. Sutliff</u>, 262 Ala. 622, 627, 80 So. 2d 636, 640 (1955). … [T]he circuit court would have subject-matter jurisdiction over properly pleaded claims for an accounting and alleging improper inter vivos transfers … as part of the general administration of [the decedent's] estate once the circuit court properly enters the order transferring the administration of the estate to circuit court."); cf. <u>Hughes v. Branton</u>, 141 So. 3d 1021, 1027-28 (Ala. 2013) (holding that a circuit court, to which a will contest had been transferred under § 43-8-198, did not have jurisdiction over an accompanying request to set aside a deed that the decedent had executed before she died).  We are constrained to conclude that the circuit court did not obtain jurisdiction over the challenge to the 2020 deed.[6]

<u>Weight of the Evidence With Respect to the Validity of the 2020 Will</u>

_____

[6]If a will contest is pending, the appropriate course of action would be to resolve that contest and settle on the identity of the appropriate personal representative of the estate, who may then challenge the validity of a deed.  <u>See</u>, <u>generally</u>, <u>Wells v. Wells</u>, 49 So. 3d 216 (Ala. R. Civ. App. 2010) (wherein a duly-appointed personal representative of decedent's estate challenged the validity of an inter vivos transfer of real property by the decedent), abrogated on other grounds by <u>Coprich v. Jones</u>, [Ms. SC-2023-0675, June 21, 2024] ___ So. 3d ___ (Ala. 2024). A circuit court does not automatically obtain jurisdiction over all aspects of a decedent's estate merely because a will is contested in the circuit court.

After a multiday trial, the jury unanimously determined that the 2020 will was invalid. After the circuit court entered a judgment on that verdict, the proponents filed a motion for a new trial, arguing that the jury's verdict was against the great weight of the evidence. The circuit court denied that motion, and the proponents appealed from that denial.

Although there is a presumption that a decedent had the capacity to validly execute a will, that presumption may be overcome. Brock v. Kelsoe, 335 So. 3d 624, 627 (Ala. 2021). The jury in this case determined that Beatrice had met her burden, and the applicable standard of review is a strict one:

> "The standard of review of an order denying a new-trial motion on the ground that the verdict is against the weight of the evidence is well established. 'No ground for reversal of a judgment is more carefully scrutinized or rigidly limited than the ground that the verdict of the jury was against the great weight of the evidence.' Christiansen v. Hall, 567 So. 2d 1338, 1341 (Ala. 1990). 'A jury verdict is presumed correct, and this presumption is strengthened by the trial court's denial of a motion for new trial.' Med Plus Props. v. Colcock Constr. Group, Inc., 628 So. 2d 370, 374 (Ala. 1993)."

Lloyd Noland Hosp. v. Durham, 906 So. 2d 157, 168 (Ala. 2005). We will not reverse the circuit court's denial of the motion for a new trial "unless, after allowing all reasonable presumptions as to the verdict's correctness, the preponderance of the evidence is so against it that this court is clearly

17

convinced that it is wrong and unjust." Deal v. Johnson, 362 So. 2d 214, 218 (Ala. 1978).

> "A testator has testamentary capacity when, at the time the will is executed, the testator (1) knows his or her estate and the property to be devised and bequeathed, (2) knows the natural objects of his or her bounty, and (3) understands that he or she is making a will. Smith v. Vice, 641 So. 2d 785, 786 (Ala. 1994). The key inquiry is whether the testator had testamentary capacity on the day the will was executed, which may be inferred from a witness's observation of the testator's mental and physical condition either before or immediately after execution of the will."

Brock, 335 So. 3d at 627. See also Ex parte Helms, 873 So. 2d 1139, 1147 (Ala. 2003) (indicating that testamentary capacity means that a testator can recall what property he or she is devising, understands how he or she desires to dispose of the property, and is aware of the identity of his or her desired devisees).

> "Determining whether a testator had testamentary capacity requires a 'broad evidentiary inquiry.' Allen v. Sconyers, 669 So. 2d 113, 117 (Ala. 1995). Evidence relevant to that inquiry includes evidence of ' "the mental and physical condition of the testat[or], either before or immediately after execution of the will" ' and evidence of the testator's ' " 'conversations, deportment, acts, and appearance.' " ' Allen, 669 So. 2d at 118 (quoting Fletcher [v. DeLoach], 360 So. 2d [316,] 318 [(Ala. 1978)])."

Taylor v. Hanks, 333 So. 3d 132, 135 (Ala. 2021).

It is not seriously disputed that Nancy was, generally speaking, cognitively impaired during the final weeks of her life. The parties disagree, however, about Nancy's mental state at the time she executed the 2020 will on April 7, 2020.

Approximately two weeks before Nancy signed the 2020 will, she had been admitted to a hospital two times in four days. She was diagnosed with dementia, chronic obstructive pulmonary disease, "failure to thrive," biventricular heart failure, and chronic kidney disease. The proponents' expert witness testified that Nancy had "good days and bad days" and suffered from instances of delirium, but not dementia. That expert's testimony suggests that Nancy had periods of lucidity. But, during one of her last hospital stays, Nancy scored poorly on a test that is used to evaluate the severity of a patient's dementia. A hospice physician who evaluated Nancy's condition approximately one week before she signed the 2020 will also testified. According to that witness, all of Nancy's health conditions and medications were known to cause cognitive impairment, but it was difficult to determine whether her confusion was solely the result of dementia or if it was the result of a combination of her various health problems and medications. In any

19

event, although the hospice physician agreed that patients with dementia or delirium can have lucid moments and that it was possible that Nancy could recognize people or follow instructions, the hospice physician was of the opinion that Nancy lacked the mental capacity to understand documents that she might be asked to sign. Of course, both of these expert witnesses underwent cross-examination aimed at challenging the weight of their testimony, including the fact that the hospice physician never personally met Nancy and was not present when she signed the 2020 will.[7]

After Nancy was discharged from the hospital for the last time, she entered hospice care. Apparently, Nancy was unable to execute documents relating to hospice care, so Magen executed them for her, noting Nancy's dementia as the reason Nancy was unable to sign the documents herself.

Shortly thereafter, Magen and Culpepper found the 2011 will, and Culpepper called Beatrice and discussed the disposition of the subject property. After that conversation, Magen sent Beatrice a text message

---

[7]The proponents' expert witness also did not personally observe Nancy at any point.

on her cellular telephone suggesting that Magen believed that Nancy intended for her to own the subject property after Nancy's death. Magen testified during the trial that Nancy had asked her and Culpepper approximately two years before she signed the 2020 will if they would like to own the subject property. She also testified that Nancy had asked Magen, Culpepper, and their children to move in with Nancy in November 2019.

According to Magen, after her text-message correspondence with Beatrice, Nancy asked Magen to consult with an attorney regarding a new will. Magen testified that Nancy specifically asked her to contact the attorney who had drafted the 2011 will and other end-of-life-related documents. According to Magen, however, that attorney did not return her or Culpepper's telephone calls, so she instead consulted with the only other attorney she knew, who later drafted the 2020 will, which Culpepper retrieved from the attorney's office. Nancy never met with the attorney, although Magen testified that she believed that the attorney had had one telephone conversation with Nancy. Four days after Magen's text message to Beatrice, and eight days after Nancy could not execute hospice-care documents because of her dementia, Nancy

21

executed the 2020 will and the 2020 deed before a traveling notary public and two witnesses who Magen and/or Culpepper knew personally.[8]

One friend of Nancy, who had lived with Nancy for five years until 2018, was asked by Magen to witness the execution of the 2020 will, but she declined because she did not believe that Nancy "would understand what she was signing." According to that witness, Nancy was usually asleep, would wake for only five minutes at a time, and, while awake, was confused. For example, the witness testified that, two or three days before Nancy executed the 2020 will, she had made outlandish untrue statements, such as that she had taken a three-day train ride home from the hospital and that she had to use a walker because she had been born with her feet pointing in the wrong direction. Hospice records indicate that Nancy was "continuously confused." A hospice worker testified that Nancy was bedbound and, while awake, was confused. The worker also testified that, had she known about the 2020 will, she would have

_____

[8]It is clear from the parties' briefs that one of the witnesses to Nancy's signing the 2020 will was a friend of Culpepper and often hunted on the subject property. It is not clear who the other witness was. Beatrice describes the two witnesses as the "best friends/co-workers" of Culpepper and/or Magen. The proponents do not respond to that assertion in their reply brief.

reported it to her supervisor because of Nancy's confused state. Finally, in the 2020 will, Nancy purported to leave a particular automobile to her neighbor, but she had already gifted that vehicle to the same neighbor four or five months earlier. As with the other witnesses, these witnesses were subjected to cross-examination.

For their part, the proponents primarily take the position that Nancy was in a lucid interval when she signed the 2020 will. They note that, "[i]f the challenging party shows the grantor suffers from a permanent type of incapacity, then the defendant party has the burden to show the transaction occurred during a lucid interval." Proponents' brief at 47. The proponents point out that the notary public, who also is licensed as a nurse's assistant, testified that she was able to obtain certain information from Nancy, including her birthday and the identity of the then-current president. She also testified that Nancy indicated that she was aware that she was leaving the subject property to Magen and Culpepper and that those two people had taken care of Nancy while she was in poor health. A Chaplin working with hospice care testified that Nancy was able to express opinions regarding her spirituality. One of the witnesses to Nancy's execution of the 2020 will, who had known

Nancy for approximately 10 years, testified that Nancy knew who he was when she signed the 2020 will and that she "was the same lady [he had] always met every time [he] went out [to the subject property]." Magen and another beneficiary of the 2020 will testified that, on the day Nancy signed the will, she was doing "fine" or "all right." One of Nancy's stepchildren, another beneficiary under the 2020 will who admitted that she stood to inherit a "substantial" amount of money under that will, visited Nancy in the week leading up to the execution of the 2020 will. She testified that Nancy had been very confused the day she was released from her final hospital visit but that she "got better over the next couple of days," could carry on a conversation, and stated at some point that she wanted Magen and Culpepper to own the subject property.

But it was up to the jury to hear this testimony and to weigh it. Cross-examination revealed that the notary public's questions to Nancy were "yes or no" questions and that the notary public had been unaware of Nancy's diagnoses and her prescribed medications, which included morphine and lorazepam, medications the notary public agreed can affect cognitive ability. See Ex parte Helms, 873 So. 2d at 1147-48 (holding that evidence indicating that the decedent ingested Lortab before and

24

after executing the challenged will, the evidence of the side effects of Lortab, and the evidence of the decedent's "physical pain and mental distress" created a jury question on the issue of the decedent's testamentary capacity). The hospice Chaplin testified that he had visited with Nancy on two occasions. On the first occasion, Nancy was asleep. On the second, the Chaplin testified, she was awake but "very tired." He did not specifically remember any conversation he had had with Nancy, but his notes suggested that Nancy could answer basic questions and indicated that she had religious faith, although it is not entirely clear from the Chaplin's testimony how she communicated that fact. The Chaplin testified that Nancy was "alert," but, he agreed, that simply meant that she was awake. The witness to the 2020 will who testified that Nancy recognized him and was behaving somewhat normally was a friend of Culpepper and often hunted with him on the subject property. Cross-examination of that witness also revealed some contradictions with other testimony that had been given regarding the circumstances on the day Nancy signed the 2020 will.[9]

---

[9]The witness testified that he was present when the notary public asked Nancy about the identity of the then-current president and that Nancy had responded: "Trump." In an earlier deposition, the witness

It was the jury's duty to resolve conflicts in the evidence, <u>Beauchamp v. Coastal Boat Storage, LLC</u>, 4 So. 3d 443, 451 (Ala. 2008), and to judge the credibility of the witnesses. <u>Flint Constr. Co. v. Hall</u>, 904 So. 2d 236, 250 (Ala. 2004). Based on the conflicting evidence about Nancy's capacity, it was the jury's duty to sort through that evidence to make a determination supporting a verdict. It is clear from the record in this case that the jury was presented with ample evidence supporting the conclusion that, when she executed the 2020 will, Nancy lacked the requisite capacity to make a valid will. Thus, we cannot say that the jury's decision in this case is so against the preponderance of the evidence that we are "clearly convinced that it is wrong and unjust." <u>Deal</u>, 362 So. 2d at 218. The circuit court did not err in denying the proponents' motion for a new trial.

<u>Costs and Fees</u>

---

testified that Nancy had identified "Obama" as the president. Finally, he testified that Nancy held the 2020 will when she signed it. This testimony conflicts with that of the notary public, who claimed that she had asked Nancy various questions while the two were alone in Nancy's bedroom, including the question about the identity of the president, and that the notary public had had to hold the relevant documents while Nancy signed them.

26

Beatrice moved the circuit court to award her "costs" under § 43-8-196, Ala. Code 1975, which provides:

> "The costs of any [will] contest under the provisions of this article [i.e., Title 43, Chapter 8, Article 7] must be paid by the party contesting if he fails; otherwise, it must be paid by the plaintiff or out of the estate, or in such proportion by the plaintiff or out of the estate as the court may direct; and for the costs directed to be paid by the plaintiff or defendant, execution may be issued as in other cases; and the costs directed to be paid out of the estate may be collected as other claims against an estate are collected."

The circuit court did not rule on Beatrice's motion for costs, resulting in the denial of that motion under Rule 59.1, Ala. R. Civ. P. Beatrice cross-appealed from that denial.

The parties agree that, if this Court affirms the circuit court's judgment on the jury's determination that the 2020 will is invalid, the circuit court is required to award Beatrice compensation for the costs, in the form of expenses other than attorney fees, that she incurred in prosecuting the will contest. They disagree, however, as to who should pay that award -- the proponents or Nancy's estate.

In addition, there is a long-standing line of precedent construing "costs," as that term is used in § 43-8-196, to include attorney fees. See Clark v. Clark, 287 Ala. 42, 247 So. 2d 361 (1971); Bleidt v. Kantor, 412

So. 2d 769 (Ala. 1982); Hart v. Jackson, 607 So. 2d 161 (Ala. 1992); Whitehurst v. Baker, 959 So. 2d 69 (Ala. 2006); and McGee v. McGee, 91 So. 3d 659 (Ala. 2012). Beatrice asserts that she is entitled to attorney fees because she was meritorious in contesting the validity of the 2020 will. The proponents, on the other hand, ask the Court to overrule the above-referenced line of cases, which we decline to do. Alternatively, the proponents assert that, regardless of the fact that Beatrice succeeded in challenging the 2020 will, "[f]ees can only be awarded against a losing party in a will contest if their claims are 'altogether without merit.'" Proponents' reply brief at 28 (quoting Bleidt, 412 So. 2d at 771-72). According to the proponents, their claims "at the very least, had merit." Id.

We reverse the circuit court's denial of Beatrice's motion for an award of costs. We remand the matter for the circuit court to determine the amount of non-attorney-fee costs Beatrice incurred in challenging the 2020 will and to award Beatrice those costs, to consider whether to award Beatrice attorney fees, and to determine who should pay the amounts awarded.

## Conclusion

The circuit court's judgment is affirmed to the extent that it is based on the jury's verdict invalidating the 2020 will. The judgment is reversed to the extent that it is based on the jury's verdict invalidating the 2020 deed, and the matter is remanded for the circuit court to vacate that portion of the judgment. We also reverse the circuit court's denial of Beatrice's motion for costs, and the matter is remanded for further proceedings on that motion.

SC-2024-0156 -- AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.

SC-2024-0190 -- REVERSED AND REMANDED.

Stewart, C.J., and Bryan, Mitchell, and McCool, JJ., concur.